𝕎𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

JOSEPH CARPENTER *et al. vs.* PETER MILLER'S EX'RS.

January Term, 1869.

1. A clause in a codicil to a will, devising estate "to the propagation of the Gospel in foreign lands" is void for uncertainty in the devisee.

2. A second will inconsistent with the first will, perfect in its form and execution, but incapable of operating as a will on account of some circumstances *dehors* the instrument, may nevertheless be set up as a revocation of the first.

3. The rule of construction where a second will or codicil is set up to revoke a first will is, that wherever the words are imperative though inoperative by reason of some incapacity in the devisee, they operate a revocation of a former will; and wherever the words are precatory or expressing hope, desire or request, if the object of hope, desire or request be certain and definite, the words are considered imperative, and are held by the courts to create a trust for the purpose indicated, and operate a revocation of a former will. But whenever the prior dispositions of the property are complete, and the words are precatory or expressing hope, desire or request and the object of the hope, desire or request be uncertain and indefinite, the words will not be held to create a trust or be construed to revoke a former will.

The opinion of the judge in this cause gives the material points of controversy.      •

*Lamb & Paull* for the appellants.

This cause was once before in the court of appeals. The decree dismissing the bill was reversed and the case remanded for the appellant to have an opportunity to propound the codicil in question to the probate court as a testamentary paper, and if deemed a testamentary paper and ordered to record, then for the chancery court to construe

COURT OF APPEALS OF WEST VIRGINIA.           175

Jan'y Term,           Carpenter *et al.* vs. Miller's Ex'rs.           1869.

it.   The paper was accordingly propounded to the county
court for probate, where it was construed to be a testamen-
tary paper, and was ordered to be recorded.   The record of
the case now in court is identically the same of the old case,
with the addition of the decree of the court of appeals re-
versing and remanding the cause, the order of probate en-
dorsed on the codicil, and the opinion of the judge and de-
cree dismissing the bill the second time.

The question now before the court is this, is the opinion
and decree right?   We maintain that they are not.   And
here it may be remarked in the outset that it was a little
remarkable for the court of appeals to do so vain a thing as
to reverse the decree of the court below and remand the
cause for it to be dismissed again, if they saw that even if
the instrument was construed to be a testamentary paper,
and ordered to be recorded by the probate court, such must
be the result.   They surely would have given some intima-
tion of it if such had been their opinion, and they still more
surely would have disallowed a second appeal.

Upon the merits is not the law with the appellants?   There
are but two questions involved in the case.

1st.   Are not the beneficiaries in the will too vaguely de-
fined to enable them to take under the will?

2nd.   Are not the requests of a testator expressed in his
will his command?

The first question seems to be conceded both in the an-
swers and in the opinion of the judge; the proceeds were
to be given to "the propagation of the Gospel in foreign
lands."   The people of all the world except our own people
were to be the beneficiaries.

In *Gallegor's ex'rs* vs. *Attorney General, &c.*, 3 Leigh, 450,
the testator directed his executors to lay by 2,000 dollars to
"be distributed among needy, poor and respectable widows."
He also gave a lot of ground to trustees whom he named, to
them their heirs and assigns forever, "upon trust to prevent
all and every person and persons belonging to the Roman
Catholic Church, as members thereof, or professing the
Roman Catholic religion, and residing in the said city of

Richmond at the time of my (his) death to build a church on the said moiety of the said lot of lands, for the use of themselves, and of every other person and persons of that religion who may hereafter reside in the said city of Richmond." These bequests and the devise were held uncertain as to the beneficiaries, and, therefore, void, yet they were much more certain than they are in this case.

So in the case of *Janey's ex'rs* vs. *Latane, et al.*, 4 Leigh, 351, the bequests were more specific than in this case, and yet they were held void for uncertainty.. So in the case of the *Literary Fund* vs. *Dawson et al.*, 10 Leigh, 147, the bequests and devise were held void for uncertainty, yet more certain than in this case.

Many other authorities might be quoted to the same effect, but these with the authorities referred to in the arguments in these cases, and by the judges, in their opinions, are deemed sufficient.

2nd. As to the request of a testator upon the executor and upon the subject of the request.

The difference between an executor and an administrator is this, the one has the law for his guide and the other has the will for his guide. The one can no more depart from the directions of the will than the other can from the directions of the law.

The great cardinal rule of construction of wills is to find out the intention of the testator from the whole will, and this intention must prevail unless it violates some rule of law. *Land* vs. *Otley*, 4 Rand., 213.

The paper in question having been ascertained by judicial sentence to be a testamentary paper it is to be read in connection with the will and as a part of it. Take it in connection with the 5th item of the will, where it appropriately belongs, and it will read as follows: "After the death of my wife, or the marriage of my wife, as aforesaid, I devise that all my personal property be sold, and after the payment of the one hundred dollars aforesaid for the removal of the negroes, I give and bequeath the residue, together with all my lands and stock, consisting of five shares in the

James river and Kanawha company, to my friends, Hartwell I. Chandler and Lewis A. Alderson, to be equally divided between them in fee simple, and request them to give the entire proceeds * * * * to the propagation of the Gospel in foreign lands."

The plain meaning of the whole will when thus transposed and read together is, that Chandler and Alderson are made trustees of his estate, to be expended by them in promoting a particular object. It is not that they shall hold the estate for their individual benefit to the exclusion of the heirs at law. Such a thought did not seem to be in his mind, but to hold it in trust for the objects declared.

A testator can as well express his will by a request as by an order. He says I *request* my executors "to apply the proceeds, &c." If it was not his will that they should do so would he request them to do so?

"Whether the words of the will are those of recommendation, or precatory, or expressing hope, or that the testator has no doubt, if the objects, with regard to whom such terms are applied are certain, and the subjects of property to be given are also certain, the words are considered imperative and create a trust." *Paul* vs. *Compton,* 8 Ves., 380; *Dashwood* vs. *Peyton,* 18 Ves., 41; 2 Story's Eq., sec. 1068.

"Wherever any person gives property and points out the object, the property and the way in which it shall go, that does create a trust, unless he shows clearly that his desire expressed is to be controlled by the party, and that he shall have an option to defeat it." *Malvin* vs. *Herghly,* 2 Ves., 339; *Meredith* vs. *Heneage,* 1 Sim. Rep., 543; 2 Story's Eq., sec. 1068.

"But where the objects of the trust are too indefinite to afford any certainty, there courts of equity will not execute it; but the property will fall into the residuum of the testator's estate, as it is clear that the legatee or devisee is not to take for his own use." Note 2 to the 1068th section of 2 Story's Equity, and the authorities there referred to. Also section 979a and section 979b. *Stubbs* vs. *Sargon,* 2 Hen. Rep., 295; *Ommany* vs. *Butcher,* 1 Turn and Russ, 260;

*Fowler* vs. *Garlicke*, 1 Russ & Mylne, 232; *Wood* vs. *Cox*, 1 Hen. Rep., 317. Many other anthorities might be quoted to prove these propositions, but we suppose these to be sufficient. They clearly refute the proposition of the judge in his first opinion that " the testator intended to leave the whole matter under the control and discretion of the executors and devisees," *ergo*, if the trust could not be enforced the court could not interfere against the trustees.

This idea of the judge is distinctly met by the case of *Stubbs* vs. *Sargon*, 2 Hen., 255, and by the doctrine enunciated in the 979th section of Story's Equity. So in *Frazer* vs. *Frazer*, 2 Leigh, 547, and in *Gallego's ex'or* vs. *Attorney General*, 3 Leigh, 450. In this latter case the testator gave to the trustess, named in the will, the property in question their heirs and assigns forever, as in this case, and yet it was not pretended that they were to retain the property.

The authorities referred to by the judge we respectfully submit do not sustain his decree. They are to the effect that where the legatee has an option left him to do or not to do, there a request is not equivalent to a command. Here there is no option left. The executors are requested to give the entire proceeds of the estate to "the propagation of the Gospel in foreign lands." They can not say we have an option to do it or not to do it, and, therefore, we will not do it. We will keep it ourselves. This would certainly not be executing the will. There being no option left, the request is equivalent to a command, just as much so as the bequest in *Gallego* vs. *Attorney General* of 2,000 dollars "to be distributed among needy, poor and respectable widows."

MAXWELL, J. The testator Miller, by a will made by him bearing date on the 15th day of September, 1845, gave all the residue of his property to his friends Chandler and Alderson, in fee simple, and appointed the said persons the executors of his will. After the death of Miller the said will was probated and the said. Alderson qualified as executor. Afterwards, the appellants here, who claim to be the

heirs at law of Miller, filed their bill to have probated and construed a codicil to said will, bearing date on the 6th day of June, 1856, and alleged to be in the possession of the said Chandler and Alderson.     The bill claims that the codicil is a revocation of the will as to the residuum, and that the codicil is itself void for uncertainty, by reason of which the testator died intestate as to the residuum of his property and it descended to his heirs at law, the appellants.

· The codicil is in these words: "I, Peter Miller, of Monroe county, Virginia, do request my executors, H. J. Chandler and L. A. Alderson, to give the entire proceeds of my estate, when said estate shall fall into their hands, according to my will, to the propagation of the Gospel in foreign lands.     Given under my hand," &c., and signed by him.

When the cause came on to be heard the bill was dismissed, but the complainants took an appeal to the court of appeals of Virginia, where that decree was reversed and the cause remanded, with directions to the court below to send the codicil to the county court of Monroe county for probate, that being the court in which the will was probated.     The codicil was probated by the county court as a testamentary paper, and afterwards the cause was again heard in the circuit court and the bill again dismissed and another appeal taken to the court of appeals of Virginia, whence it has been transferred to this court by operation of law.

The appellants claim that the court erred in dismissing the bill and not rendering a decree according to the prayer of the bill; that all the property embraced in said codicil passed to the heirs at law of Peter Miller, deceased.     The first question to be considered is whether or not the object expressed in the codicil "the propagation of the Gospel in foreign lands" is too indefinite and uncertain to be executed.

In a late case, *Wheeler* vs. *Smith*, 9 How., 76, in the supreme court of the United States, this question was examined quite extensively.     In the will in that case the testator, after making a number of specific bequests, declared: "The residue of my estate is left in trust of Hugh Smith, Robert J. Taylor and Phineas Janney, for such purposes as

.they consider promise to be most beneficial to the town and trade of Alexandria. If any difficulty occurs in construction as to any of my bequests, R. J. Taylor is especially charged to give said construction." The said Smith, Taylor and Janney were appointed executors. In a codicil the testator declared, "I leave the residue of my estate, after paying all bequests and appropriations, to some disposition thereof which my executors may consider as promising most to benefit the town and trade of Alexandria. Now I leave the same entirely to their disposition of it in such manner as appears to them promises to yield the greatest good."

The court held unanimously that the devisees were too uncertain and could not be sustained. Judge McLean, in delivering the opinion of the court, makes this statement, "In a late case in Virginia, not yet reported, of *Brand's administrator vs. Brand, et al.*, the following devise was held to be void: 'Third, I give to the Rev. W. J. Plummer, D. D., the residue of my estate, both real and personal, in trust for the board of publication of the Presbyterian church in the United States.'" I do not find that this case has yet been reported.

All the Virginia cases are to the same effect as the above cases. From the principles laid down in the cases referred to it is clear that the devise in the codicil under consideration is void for uncertainty in the devisee.

This brings us to the next question, which is, the devise in the codicil being void for uncertainty does the codicil nevertheless revoke the will as to the property mentioned in the codicil?

It is well settled that a second will, inconsistent with the first, perfect in its form and execution, but incapable of operating as a will on account of some circumstance *dehors* the instrument, may nevertheless be set up as a revocation of the first. 3 Lomax Dig., 61, *Loughton vs. Atkins*, 1 Pick., 545.

Story, in his Equity Jurisprudence, vol. 2, sec. 1068a says, "In short, it may be stated, as a general result of the

cases, in the language of Lord Eldon, that, whether the words of the will are those of recommendation, or precatory, or expressing hope, or that the testator has no doubt, if the objects, with regard to which such terms are applied, are certain, and the subjects of property to be given are also certain, the words are considered imperative, and create a trust." And in section 1070, he says, "wherever, therefore, the objects of the supposed recommendatory trusts are not certain or definite;—wherever the prior dispositions of the property import absolute and uncontrolable ownership; in all such cases courts of equity will not create a trust from words of this character." The same doctrine will be found in the case of *Moggridge* vs. *Thackwell*, 7 Ves. 84; *Morice* vs. *the Bishop of Durham*, 10 Ves., 536.

The rule then is that wherever the words are imperative, though inoperative by reason of some incapacity in the devisee, they operate a revocation of a former will, and whenever the words are precatory, or expressing hope, desire or request, if the object of the hope, desire or request be certain and definite the words are considered imperative, and are held by the courts to create a trust for the purpose indicated, and operate a revocation of a former will. But whenever the prior dispositions of the property are complete and the words are precatory, or expressing hope, desire or request and the object of the hope, desire or request be uncertain and indefinite the words will not be held to create a trust or be construed to revoke a former will.

In the will of Miller the property is given to Chandler and Alderson to be equally divided between them, in fee simple. They are also named as executors. In the codicil the language is, "I do request my executors, Chandler and Alderson, to give, &c."

According to the will then they would take the residuum in absolute and uncontrolable ownership, and the objects of the recommendatory trust mentioned in the codicil being uncertain and indefinite a court of equity cannot, according to the authorities, construe the words of the codicil to create a constructive trust which would fail for uncertainty, merely

for the purpose of working a revocation of the will to defeat the residuary devisees.

It seems to me that the decree dismissing the will is right and that it will have to be affirmed, with damages and costs to the appellees.

The other judges concurred.

DECREE AFFIRMED.