# CHARLESTON.

## PACK *v.* SHANKLIN *et al.*

### (DENT, JUDGE, *dissenting.*)

### Submitted January 27, 1897—Decided April 10, 1897.

1. WILLS—*Beneficiaries—Designation of Beneficiaries.*

    S., by his last will and testament, directed that after his funeral expenses, *etc.*, were paid, the residue of his estate, both real and personal, be given equally between the three following benevolent causes, viz.: Home missions, foreign missions, and. the American Bible Society; that is, to the trustee of each of the above causes. He meant the home and foreign missions of the Southern Presbyterian Church, except five hundred dollars which he directed to be loaned, and the interest on same to be applied annually to the support of pastor's salary, of the Southern Presbyterian Church at Centerville, Monroe county, W. Va. Upon a bill filed praying that said bequests be declared void, *held*, that said bequests are void, on account of the uncertainty of the beneficiaries. (p. 321.)

2. WILLS—*Trustees of Missions—Presbyterian Church.*

    The "Trustees of Home Missions and Foreign Missions of the Southern Presbyterian church" cannot be considered to be a corporation identical with the one known as the "Trustees of the General Assembly of the Presbyterian Church in the United States," chartered by the legislature of North Carolina. (p. 320.)

3. WILLS—*Construction of Wills.*

    In the interpretation of a will, the true inquiry is not what the testator meant to express, but what do the words used express. (p. 313.)

4. WILLS—*Certainty of Disposition—Validity of Disposition.*

    To the validity of every disposition as well of personal as of real estate, it is requisite that there be a definite subject and object; and uncertainty in either of these particulars is fatal. (p. 316.)

Appeal from Circuit Court, Monroe county.

Suit by J. W. Pack against John P. Shanklin, in his own right and as executor of the will of James Shanklin, deceased, and others. From the decree rendered, the trustees of the Generally Assembly of the Presbyterian Church in the United States appeal.

*Affirmed.*

JOHN W. HARRIS, for appellants.

A. F. MATHEWS, MILLER & REED and JOHN OSBORNE, for appellees.

ENGLISH, PRESIDENT:

This was a suit in equity, instituted in the Circuit Court of Monroe county, by J. W. Pack against John P. Shanklin, in his own right and as executor of the estate of James Shanklin, deceased, and others, seeking the interpretation of the last will and testament of James Shanklin, deceased, and praying that certain bequests, to wit: one made by said will to home and foreign missions of the Southern Presbyterian Church, or the trustees of said missions, and to the American Bible Society, or the trustees thereof, and to the support of the pastor's salary of the Southern Presbyterian Church at Centerville, W. Va., be declared void; that each and all of the charitable bequests be declared void; that the heirs and next of kin of said Shanklin, the testator, be declared entitled to all of his estate, after the payment of the debts. The plaintiff, in his bill, alleges that in the year 1893 James Shanklin departed this life, in the county of Monroe; that said Shanklin was never married, and left no children surviving him, nor did he leave any brothers or sisters surviving him, but left, as his heirs at law and next of kin, the plaintiff and the defendants, his nephews and nieces, except the home and foreign missions of the Southern Presbyterian Church and the American Bible Society; that the plaintiff is a nephew and one of the heirs at law and next of kin of said Shanklin; that said Shanklin died testate, having on the 23d day of July, 1892, executed his last will, which was on the 5th day of September duly probated and admitted to record; that said Shanklin, at the time of his death, was the owner of a large estate, real and personal; that said real estate is estimated to be worth from seven thousand dollars to eight thousand dollars. Said will directs that "after funeral expenses, *etc.*, are paid, that the residue of the estate, both real and personal, be given equally between the three following benevolent causes, viz.: Home missions, foreign missions, and the American Bible Society; that is, to the trustee of each of the above

causes. I mean the home and foreign missions of the Southern Presbyterian Church, except $500, which I direct to be loaned, and the interest on same to be applied annually to the support of pastor's salary of the Southern Presbyterian Church at Centerville, Monroe county, W. Va.; and, in the event that the said church fails entirely to have a pastor, then the above sum to be equally divided between the above-named benevolent causes." And W. W. Pence and John P. Shanklin were by said will appointed executors, and duly qualified as such, and took charge of said estate, both real and personal. Plaintiff further alleges that, by said will, said James Shanklin attempts to dispose of his entire estate. He further alleges that the home and foreign missions of the Southern Presbyterian Church and the American Bible Society, or the trustees thereof, if there be any, are neither natural persons nor corporations, but they are, each and all of them, incorporated religious societies or organizations, whose members are perpetually changing, and the bequests and provisions of said will for their benefit are indefinite charitable bequests; that the beneficiaries under said will are each indefinite, uncertain, and unascertainable.

Plaintiff further charges that there are no trustees for said home and foreign missions and for said American Bible Society, or, if so, they are unknown to him; that the bequests of five hundred dollars to the support of the pastor's salary of the Southern Presbyterian Church at Centerville, Monroe county, is void, and the beneficiary is indefinite, unascertained, and unascertainable. The plaintiff further alleges that the Southern Presbyterian Church is not a natural person or a corporation, but a religious society, and the said home missions and foreign missions and American Bible Society are only agencies of said church or society; that, if there ever were trustees for said beneficiaries, they could not hold property and carry on business or sue in this State. And plaintiff further alleges that each and all of the bequests of said will are void, and that the whole of the estate real and personal of said James Shanklin should be, after the payment of the debts, distributed between his heirs at law and next of kin, who are entitled to the same; and he prays that the bequests made by said will to home and foreign missions of the Southern

Presbyterian Church, or the trustees of said missions, or to the American Bible Society, or the trustees thereof, and to the support of the pastor's salary of the Southern Presbyterian Church at Centerville, W. Va., be declared void, and that each and all of the charitable bequests be declared void; that the heirs and next of kin of the said Shanklin, the testator, be declared entitled to all of his estate after the payment of the debts.

The American Bible Society filed its separate answer, claiming that it was an incorporated body, duly incorporated by the general assembly of the state of New York, by an act passed March 25, 1845 (chapter 68), which has been enlarged and modified by subsequent acts, so that it is fully authorized and empowered to receive and appropriate any bequests or devises that might be made for its use as a corporate body, exhibiting with said answer authenticated copies of said acts, claiming that, under the same, it is fully authorized to receive and appropriate the bequests of the testator, James S. Shanklin. Said respondent further says that whatever construction the court may put upon the bequest of five hundred dollars to be put out at interest, and the interest to be applied annually to the pastor's salary of the Southern Presbyterian Church, respondent readily acquiesces; but, should the court hold that said provision cannot be enforced by the court, then respondent will claim that one-third part of said sum must be decreed to it, and the said bequest must be divided equally between or among the three benevolent causes named in said will.

On petition, the trustees of the general assembly of the Presbyterian Church in the United States were made party to this cause, and filed their answer thereto, putting in issue certain allegations of the plaintiff's bill, and admitting that the Southern Presbyterian Church is not a natural person, nor a corporation, but claiming that the same is a religious society, and that the said home and foreign missions are agencies of the said church or society. Said defendant further averred that the said Southern Presbyterian Church and the home and foreign missions of said church are capable, in law, of taking the bequests bequeathed in said will through this defendant, under and by virtue of a charter granted to this defendant by the

legislature of the state of North Carolina; and respondent says that it is not true that each and all of the bequests of said will are void, nor that the whole of the estate, real and personal, of said James Shanklin should, after the payment of his debts, be distributed to his heirs at law and next of kin. Said respondent further proceeds to set forth the provisions of the charter granted to them by virtue of the act of the legislature of the state of North Carolina ratified the 19th of February, 1866, claiming that thereby they are authorized and empowered to take and hold all such estate, property, and effects as may be acquired by gift, purchase, devise, or bequest to enable the General Assembly of the Presbyterian Church in the United States to undertake and carry on the work of Christian education, of foreign and domestic missions, of the publishing of such books, tracts, and papers as are connected with the diffusion of religious literature and learning, and of the building up and supporting churches of that faith and worship in the United States aforesaid; that all the estate, property, and effects that should be acquired by the said trustees and their successors at any time should be held and disposed of according to the directions of the general assembly aforesaid, provided that the property, real and personal, held or possessed by said corporation, should not exceed two millions of dollars; and, by the fourth section of the charter so granted to the defendant, it was further provided that, if the general assembly should establish any committees, boards, or agencies for any of the purposes recited in the first section of the charter, the same should be held and deemed branches of that incorporation; and, if any gift, grant, sale, devise, or bequest should be made to the trustees of the General Assembly of the Presbyterian Church in the United States for the use of such boards, committees, or agencies, the same should be good and effectual to pass to such objects, whenever the donor, grantor, bargainor, or testator should name the aforesaid corporation in general terms. And the defendant further alleges that the property, real and personal, held or possessed by it, does not exceed two millions of dollars. The defendants, further answering, proceed to state the existence of a body of Christians known as the "Presbyterian Church in the United States of

America," previous to the late Civil War, which embraced in its membership citizens of each of the United States, and states briefly their system of church government; that, in furtherance of the work of the church, the general assembly, at an early day, committed part of its work to certain members selected from time to time for the purpose, and constituted into boards, among which was the board of foreign missions, having in charge the work of missions in foreign lands, and also a board of home or domestic missions, which had charge of the work of missions in the United States; that on the 4th day of December, 1861, the Presbyterians within the bounds of the southern states composing the Confederacy, together with certain other Presbyterians, determined to separate from the Presbyterian Church of the United States of America, and sent commissioners to an assembly which met at that date in Augusta, Ga., and organized under the name of the "General Assembly of the Presbyterian Church in the Confederate States of America"; at the end of the war, this body, at its session in Macon, Ga., commencing the 14th December, 1865, changed the name of the church it represented to the "Presbyterian Church in the United States"; and said church since its separation, in 1861, has been popularly known as the "Presbyterian Church South," or the "Southern Presbyterian Church," and the Presbyterian Church in the United States of America, from which it separated, has been known as the "Presbyterian Church North," or the "Northern Presbyterian Church"; that the General Assembly of the Confederate States determined, among other things, upon the organization of permanent agencies for the purpose of conducting its foreign and home or domestic missions work, and, in pursuance of such design, established a committee of foreign missions, and a like committee of home or domestic missions; that the duty of the committee of foreign missions was to propagate the gospel ministry among the heathen, and this work was carried on by the general assembly through this committee, which was directly responsible to the general assembly; that the duty of the home or domestic missions committee was to propagate the gospel ministry in the destitute field within the territory of the church which was done by the general assembly,

through this committee; that upon the changing of the name of the church, in 1865, there was a corresponding change in the names of these committees, but they were commonly known as the home or domestic missions and the foreign missions of the Southern Presbyterian Church; and the defendant charges that the committees aforesaid were intended to be, and were, objects of testator's bounty. Respondent further alleges that said home and foreign missions of the Southern Presbyterian Church are duly created and constituted by the General Assembly of the Presbyterian church in the United States, commonly known as the "Southern Presbyterian Church," for the purposes hereinbefore set forth, and, as such, are agencies of the said church, and were such agencies so constituted at the date of the death of said testator; and being such agencies, under and by virtue of the act of the legislature of the State of North Carolina, they were incorporated, became a part and parcel of this defendant corporation, and, as such, this defendant, in law and in equity, is authorized to seize and take and hold the bequests given to the said home and foreign missions of the Southern Presbyterian Church under the will of the said testator; and the defendant prays that the said legacies or bequests so given to the said home and foreign missions of the Southern Presbyterian Church may be paid over to it.

The executors of said will also filed their answer, putting in issue the allegations of the plaintiff's bill, and a decree was entered in this case, referring the same to a commissioner, with instructions to audit, settle, and report the accounts of said executors. Certain facts were agreed among the parties to the suit: That a certain exhibit filed with the papers, marked "A,"contained in fact true copies of the charter, by-laws, and resolutions of the defendant corporation, the trustees of the General Assembly of the Presbyterian Church of the United States, and of certain resolutions and directions of the general assembly of said church, commonly known as the "Southern Presbyterian Church," and that said corporation was, anterior to the death of the alleged testator, duly organized under said charter and the laws of the state of North Carolina, and that corporation is still existing and doing business as such, and that the property, real and personal,

held or possessed by said corporation, does not exceed two millions of dollars; that, at the time the will in question took effect, the said general assembly had a committee for the purpose of carrying on the work of home missions, known as the "Committee of Sustentation," and a committee for the purpose of carrying on the work of foreign missions, known as the "Committee of Foreign Missions."

An amended bill was filed by complainant, making the heirs at law of the testator parties defendant, setting forth the bequest contained in the will, and alleging that they were all invalid, because contrary to the laws and policy of the State of West Virginia, and because of the uncertainty of the legatees, and the vagueness and indefiniteness of the beneficiaries of said bequests; that if the claim of the trustees of the General Assembly of the Presbyterian Church that they were duly incorporated under the act of the assembly of North Carolina be correct, and if said act also incorporates its board of home and foreign missions, yet said act of incorporation under which they claim to have organized is contrary to the settled law and policy of this State; that said act of assembly clearly attempts to incorporate a church, and to incorporate all the agencies of that church, which is not only repugnant to the organic law of this State, but of the State of North Carolina; that the trustees of the boards of home missions and foreign missions are appointed by the general assembly, and not by the trustees; that said boards have never organized or attempted to organize as separate and independent corporations, and have never been in any way under the control of the trustees of the general assembly; that the bequest to the Bible Society is void for want of certainty in the beneficiaries; and that the investment of the five hundred dollars is void, because no one is appointed by the will to take and hold the legal title, and the beneficiary is a nameless and uncertain person. The American Bible Society, the executors, and said trustees filed their answers to said amended bill, adopting their answers to the original bill, to which the plaintiff replied generally. Said commissioner's report was returned and excepted to.

On the 8th day of October, 1895, a decree was entered in the cause, overruling the exceptions to said commissioner's report, and confirming the same, and holding that

so much of the will of James S. Shanklin, deceased, as directed that his estate, except five hundred dollars, be "equally divided between the three following benevolent causes, viz: Home missions, foreign missions, and the American Bible Society; that is, to the trustee of each of the above causes. I mean the home and foreign missions of the Southern Presbyterian Church,"—was void, except as to the American Bible Society, as contrary to the Constitution and hostile to the policy of the State of West Virginia; that so much of said will as directs that five hundred dollars be loaned out, and the interest on the same applied to the support of pastor's salary of the Southern Presbyterian Church at Centerville, Monroe County, W. Va., was void for uncertainty; that the said American Bible Society was entitled to one-third of said estate, and that the other two-thirds should pass to the heirs at law and distributees of said James S. Shanklin. Said account was recommitted to said commissioner, with instructions to make further settlement of the accounts of the executors; and it was further decreed that W. W. Pence recover against the estate of the said James S. Shanklin the sum of nine hundred and fifty-eight dollars and eighty-five cents, with interest from the 19th of March, 1895, and that John P. Shanklin recover against said estate the sum of eight hundred and nine dollars and sixty cents, with interest thereon from the date last aforesaid, and that the sum of one hundred dollars be paid to Logan & Patton for their services as counsel in this suit on behalf of said executors, to be paid by said executors out of the funds in their hands, and from this decree the trustees of the General Assembly of the Presbyterian Church in the United States obtained this appeal.

The appellant, in its petition for this appeal, represents that it is the party designated to take under said will by the general description of the trustees of the home and foreign missions of the Southern Presbyterian Church; that there is no uncertainty as to this fact; that, the appellant being an incorporated body, the rule as to charitable bequests does not apply; and that it is entitled to take and hold under said will, and claims that the circuit court of Monroe county, by its decree of October 8, 1895, committed an error in setting aside the will of said Shanklin, ex-

cept as to the gift to the American Bible Society, and in holding the provisions therein in behalf of appellant to be void, as contrary to the Constitution and hostile to the policy of the state of West Virginia; and that it was also error in said decree to allow John P. Shanklin, one of the executors, eight hundred and nine dollars and sixty cents, and W. W. Pence, the other executor, the sum of nine hundred and fifty-eight dollars and eighty-five cents, for alleged services, in support of which no sufficient competent evidence was offered. Now, in considering the questions raised in this assignment of error, we notice, first, the cardinal rule controlling the interpretation of wills, that the intention of the testator must be looked for, and, in order to ascertain the meaning of the testator, we must take the will by the four corners, and look upon its face, and there find the intent from the words used. As was announced in the case of *Couch* v. *Eastham*, 29 W. Va. 784 (3 S. E. 23): "In the interpretation of a will, the true inquiry is not what the testator meant to express, but what do the words used express." The appellant, in its assignment of errors, represents that the "Trustees of the General Assembly of the Presbyterian Church in the United States" was the party designated to take under said will by the general description of the "Trustees of the Home and Foreign Missions of the Southern Presbyterian Church," and there is no uncertainty as to this fact, and that, the appellant being an incorporated body, the rule as to charitable bequests does not apply, and that appellant is entitled to take and hold under said will, in accordance with its terms. When, however, we look to the face of the will, it is found that the bequest is made to the following benevolent causes, viz.: "Home missions, foreign missions, and the American Bible Society; that is, to the trustee of each of the above causes." And, by way of explanation, testator says: "I mean the home and foreign missions of the Southern Presbyterian Church." It is difficult, however, to understand how the trustees of the General Assembly of the Presbyterian Church in the United States could have been intended by the language used in the will, and the language is not explained by parol testimony.

If it were thought necessary in this case to review the

early decisions founded upon cases arising in Virginia, and call attention to the jealous scrutiny with which the courts guarded against any attempt to concentrate money in the hands of religious associations, we might well content ourselves by calling attention to the case of *Association* v. *Hart's Ex'rs*, decided by the supreme court of the United States, and reported in 4 Wheat. 1, which was ably argued by William Wirt, the attorney general, on one side, and Benjamin Watkins Leigh, on the other, and an able and elaborate opinion rendered by Chief Justice Marshall. The case originated in Virginia, and the question was whether, under the following clause, contained in the will of Silas Hart: "Item. What shall remain of my military certificates at the time of my decease, both principal and interest, I give and bequeath to the Baptist Association that, for ordinary, meets at Philadelphia annually, which I allow to be a perpetual fund for the education of youths of the Baptist denomination, who shall appear promising for the ministry, always giving a preference to the descendants of my father's family,"—said Baptist Association could take the bequest above mentioned. This bequest was made subsequent to the repeal of the English statute of 43 Eliz. c. 4, in reference to the charitable uses. The chief justice, in his able opinion, reviews the common-law and English statutes upon the subject, and concludes that the association, in not being incorporated at the testator's decease, could not take this trust as a society, that the bequest could not be taken by the individuals who composed the association at the death of the testator, and that there were no persons to whom this legacy, were it not a charity, could be decreed, and that it could not be sustained in that court as a charity, and by also referring to the case of *Gallego's Ex'rs* v. *Attorney General*, 3 Leigh. 450, in which a very able and exhaustive opinion was handed down by Tucker, P.

One of the questions presented in that case was as to whether certain bequests made by said Gallego as charities to the Catholic Church were valid or void, and they were held void, the first point of the syllabus reading as follows: "Testator directs his executors to lay by $2,000 to be distributed among needy poor and respectable widows, and, in case the Roman Catholic Chapel shall be con-

tinued at time of his death, to pay $1,000 towards its support, and, if the Roman Catholic congregation shall come to a determination to build a chapel at Richmond, to pay $3,000 towards its accomplishment; and he devises a lot in Richmond to four trustees in fee, upon trust to permit all and every person belonging to the Roman Catholic church, as members thereof, or professing that religion, and residing in Richmond at the time of his death, to build a church on the lot, for the use of themselves and all others of that religion who may hereafter reside in Richmond. Upon information filed by the attorney general, in chancery, to enforce the charitable bequests and devise, held, that the bequests and devise are uncertain as to the beneficiaries, and therefore void." "The English statutes of charitable uses (43 Eliz.) having been repealed in Virginia, the courts of chancery have no jurisdiction to decree charities, where the objects are indefinite and uncertain." Judge Tucker, in the course of his opinion, says: "The history of the papal see, and of the religious houses under its dominion, is but a history of the cupidity of monks and devotees, veiled under the sacred garb of our holy religion. The vast domains of the clergy acquired by the Catholic establishment of France are known to us all. From this fatal source, among others, sprung a revolution which deluged the fairest country in Europe in blood, and, in its horrible progress, spread desolation over adjoining states, and shook the civilized world to its center. And in Protestant England, fenced around, as it has been, with *mortmain* acts, we see a church establishment possessed of overgrown wealth and power, less devoted to the cause of genuine religion than to pamper the luxury and indolence of the high dignitaries of the church. With these examples before our eyes, it is not wonderful that our statesmen have been cautious. They have been wise in their caution. The evil has not sprung from particular creeds or the peculiarities of a confession of faith. It grows out of the very nature of the thing. The church, if made capable to take, while it is continually acquiring, from the liberality of the pious, or the fears of the timid, or the credulity of the ignorant, never can part with anything; and thus, like those sustaining powers in mechanics which retain whatever they once have gained, it advances with a

step that never retrogrades. The natural cupidity of the human heart is watched by the devotee himself, with the less jealousy in his pursuit after acquisitions for the church, since he believes it to be purified from the dross of selfishness, and sanctified by the holy object of his ambition. Thus it is that, however humble in its beginning, accumulation is the natural result of the power vested in any religious society to acquire property."

In the Acts of 1841–42 of the legislature of Virginia (page 60, c. 102) it was provided that "every conveyance devise or dedication shall be valid which since the 1st day of January, 1777, has been made, and every conveyance shall be valid which hereafter shall be made of land for the use or benefit of any religious congregation as a place for public worship or as a burial place or a residence for a minister; and the land shall be held for such use or benefit, and for such purpose, and not otherwise." The court of appeals of Virginia, construing this statute in the case of *Seaburn's Ex'r* v. *Seaburn*, 15 Grat. 423, which was decided in 1859, held "that this section does not authorize a devise of land for the use of a religious congregation, but only a conveyance by deed;" also, that it "did not authorize a bequest of money to be expended in building a church at a specified place, or for the support of the pastor of such church." Upon the question of the certainty and the definiteness of bequests, we refer to the case of *Janey's Ex'r* v. *Latane*, 4 Leigh. 327, the syllabus in which case reads as follows: "Testator bequeaths to the school commissioners and their successors of South Farnham district, Essex Co., for the schooling of the poor children of that district, $1,000, to be put out at interest, and the interst only to be applied for the schooling of said poor children. There are school commissioners in the county of Essex, and testator was one of them at his death, but they are not a corporate body. There are no school commissioners of South Farnham district, nor any such district, that being only the name of an ancient parish. Held, the bequest is void." Upon this question, Jarman on Wills (volume 1. p. 356) thus states the law: "To the validity of every disposition, as well of personal as of real estate, it is requisite that there be a definite subject and object; and uncertainty in either of these particulars is fatal." In the cases of *Brooke*

v. *Shacklett* and *Carter* v. *Wolfe*, 13 Grat. 301, decided in 1856, the case of *Gallego's Ex'rs* v. *Attorney General*, 3 Leigh. 450, was approved.

In the constitution of Virginia of 1851 (article IV, section 32) it was provided that "the general assembly should not grant a charter of incorporation to any church or religious denomination, but might secure the title to church property to an extent to be limited by law"; and the same, in substance, is found in the Constitution of West Virginia (article VI, section 47). Other cases might be cited to show the disposition on the part of the courts and legislature of the State of Virginia to prevent the accumulation of money in the hands of religious institutions, and the encroachment of such institutions upon the affairs of state.

The first case considered by this Court bearing upon the question was that of *Carpenter* v. *Miller's Ex'rs*, 3 W. Va. 174, in which it was held: "A clause in a codicil to a will devising estate 'to the propagation of the gospel in foreign lands' is void for uncertainty in the devisee." The next case was that of *Society* v. *Pendleton*, 7 W. Va. 79, which involved the construction and interpretation of the will of one Maria Cooper, who died some time in 1855, testate, having in her will made the following bequests: "First. I subscribe $2,000 to the founding of an academy in or near the town of Martinsburg, to be under the control and direction of the Presbytery of Winchester [old school], which, if not sooner paid by me, I hereby direct my executor first of all to pay out the proceeds of the aforesaid land [referring to land in Pennsylvania] as soon as the same may come into his hands, to such person or persons as the said Presbytery may authorize to receive the same, the sum of $2,000. Second. I give to the trustees of the Presbyterian congregation at Martinsburg [old school] the sum of $3,000, to be applied by them towards the purchase of a lot and the erection thereon of a house, or the purchase of a house and lot, and fitting the same for the residence of the pastor of said congregation. Third. To the trustees of the board of foreign missions of the Presbyterian Church in the United States of America the sum of $500, to be applied to the uses and purposes of said board, and under its direction. Fourth. To the trustees of the board of missions of

the General Assembly of the Presbyterian Church in the
United States of America, towards the fund for superan-
nuated ministers and their families, the sum of $5,000.
Fifth.  To the trustees of the board of missions of the
General Assembly of the Presbyterian Church in the
United States the sum of $500.  Sixth.  To the American
Bible Society, formed in New York in the year 1816, I give
the sum of $500, to be applied to the charitable uses and pur-
poses of said society."  It was there held that said be-
quests were void under the statutes of Virginia and the
decisions of her courts.

The next case in this Court bearing upon the question is
the case of *Wilson* v. *Perry*, 29 W. Va. 169 (1 S. E. 302),
in which the will of John W. Perry, a citizen of Monroe
County, W. Va., was construed, and the validity of certain
bequests therein contained was passed upon, the Court
holding the following charitable bequests contained in said
will, viz: five hundred dollars to inclose the Mt. Pleasant
church and graveyard; four thousand dollars to purchase
a parsonage for Mt. Pleasant church; two hundred and
fifty dollars for the Presbyterian Sunday school at Union;
two hundred and fifty dollars for the Sunday school at
Centerville; two hundred and fifty dollars for the Sunday
school at Fairview school house; three hundred dollars for
the home missions of the Presbyterian Church; and the
remaining half of the residue of said estate to purchase a
parsonage at Union,—to be uncertain as to the benefici-
aries, and therefore void.  In that case this Court con-
sidered and approved the case above mentioned, of
*Association* v. *Hart's Er'rs*, 4 Wheat. 1, and *Gallego's
Ex'r* v. *Attorney General*, 3 Leigh. 450.

And again, in the case of *University* v. *Tucker*, 31 W.
Va. 621 (8 S. E. 410), this Court held that foreign corpo-
rations may take bequests of charities under a will made
in this State when and to the extent authorized by their
charter; also, that, when such corporations are improperly
described in the will, the bequest will not fail if it be
clearly shown by proper proof what corporations were
meant by the description.  This case is relied on by the
appellant in this cause, it being contended that the be-
quests to home and foreign missions of the Southern Pres-
byterian Church were bequests to a foreign corporation.

Now, let us examine the bequests contained in the will under consideration. Can we say that a portion of James S. Shanklin's property, real or personal, was thereby given or intended to be bestowed by any clause in his will upon any corporation, either foreign or domestic? He directs his estate, both real and personal, to be given equally between the three following benevolent causes, viz: "Home missions, foreign missions, and the American Bible Society; that is, to the trustees of each of the above causes. I mean the home and foreign missions of the Southern Presbyterian Church." There is no proof in the cause that any corporation was intended by the language used in this will. It is true, there is an agreed statement of facts in the case, first, that a paper thereto annexed, marked "A," contains printed copies of the charter and by-laws of the trustees of the General Assembly of the Presbyterian Church in the United States, and of certain resolutions and directions of the general assembly of said church, and that they are true copies of said charter, by-laws, and resolutions, and that said corporation was duly organized under said charter and the laws of North Carolina before the death of testator, and is still existing and doing business as such, and its property, real and personal, does not exceed two millions of dollars; that, at the time the will in question took effect, the said general assembly had a committee for the purpose of carrying on the work of home missions, known as the "Committee of Sustentation," and a committee for the purpose of carrying on the work of foreign missions, known as the "Committee of Foreign Missions"; that testator was for a number of years a member and officer of said church, was greatly devoted to said church, and took an active part in its work, and declared his intention of making provision in behalf of foreign and home missions in his will. Did James Shanklin, by his will, give any of his property to any corporation, foreign or domestic? The language therein contained gives it to home missions, foreign missions, and the American Bible Society; that is, to the trustee of each of the above causes. What trustee? Even if we were to hold that the words were added by way of explanation, "I mean the home and foreign missions of the Southern Presbyterian Church," yet that explanation fails to point out any corporation that is to take.

It appears in the agreed statement of facts that the trustees of the General Assembly of the Presbyterian Church of the United States, commonly known as the "Southern Presbyterian Church," had a committee of sustentation for the purpose of carrying on home missions, and a committee for the purpose of foreign missions, known as the "Committee of Foreign Missions"; but neither of these was a corporation, nor could they be under the Constitution and laws of West Virginia. When we refer to the charter of this North Carolina corporation, it is found that the trustees of the General Assembly of the Presbyterian Church in the United States are authorized to take and hold all such estate, property, and effects as might be acquired by gift, purchase, devise, or bequest to aid and enable said General Assembly of the Presbyterian Church to undertake and carry on the work of Christian education, foreign and domestic missions, *etc.*; so that it is easily perceived that, under the charter of this North Carolina corporation, there is no truestee of home missions or foreign missions. The agreement of facts shows that there was a committee of sustentation, and a committee for carrying on the work of foreign missions, under the direction of the General Assembly. It does not appear that the General Assembly was a corporation, but this corporation was authorized to receive contributions, bequests, *etc.*, to aid the General Assembly of the Presbyterian Church in carrying on foreign and domestic missions. These committees were the agents and instruments of said General Assembly, and we cannot say who was intended by the trustee of each of these causes, home and foreign missions of the Presbyterian Church. The bequest is too indefinite, and we cannot say to whom the executor would be safe in paying this legacy; and we may well ask, who is entitled to demand and receive this legacy,—the committee appointed by the General Assembly or the corporation known as the "Trustees of the General Assembly of the Presbyterian Church in the United States"? The words of the will give the bequests to neither, and we must hold it void for uncertainty; and although the pleadings in this cause are not such as would authorize a decree directing a settlement of the accounts of the executors, and a convention of the crditors of said testator, yet the parties to the cause being

of opinion that it would facilitate the settlement of the
estate, of said testator, and save costs to said estate, to
have the creditors convened, and accounts of said execu-
tors settled, and directions given to them as to the collec-
tion and distribution of the assets of the estate, as if the
pleadings in the cause had been properly framed to that
end, and having consented to such convention and settle-
ment, and these matters having been referred to a com-
missioner, who reported thereon, which report was ex-
cepted to by the American Bible Society and the trustees
of the General Assembly of the Presbyterian Church in
the United States, and the court having, as we think, prop-
erly overruled the exceptions taken to the report of Com-
missioner Kester, and confirmed the same, and decreed in
favor of W. W. Pence the sum of nine hundred and fifty-
eight dollars and eighty-five cents, with interest thereon
from the 19th day of March, 1895, until paid; and in favor
or John P. Shanklin, against said estate, the sum of eight
hundred and nine dollars and sixty cents, with interest
thereon from the date last aforesaid until paid, and that
the sum of one hundred dollars be allowed Logan & Patton,
as counsel in said suit, for their services as counsel of said
executors, to be paid by said executors out of funds in
their hands, the decree is in this respect affirmed. The
decree is also affirmed so far as it holds that so much of the
will of James S. Shanklin, deceased, as directs that his
estate, except five hundred dollars, be divided equally be-
tween the three following benevolent causes, viz. : "Home
missions, foreign missions, and the American Bible So-
ciety; that is, to the trustees of each of the above causes.
I mean the home and foreign missions of the Southern
Presbyterian Church,"—is void, as contrary to the Consti-
tution and hostile to the policy of the State of West
Virginia, except as to the bequest to the American Bible
Society, which is shown to be a corporation, and entitled
to take under the will. I also affirm the decree complained
of so far as it holds that so much of said will as directs that
five hundred dollars be loaned out, and the interest on the
same applied to the support of pastor's salary of the
Southern Presbyterian Church at Centerville, Monroe
county, W. Va., is void for uncertainty, and the appellees
must recover their costs and damages.

Dent, Judge (*dissenting*) :

I cannot concur in the foregoing decision, because I cannot stultify myself into the pretense of believing that to be false which I believe from the record to be true, to wit, that the trustees of the General Assembly of the Presbyterian Church of the United States is a legally incorporated body under the laws of the state of North Carolina, duly authorized as such trustees to receive and hold, on behalf of the "Southern Presbyterian Church," bequests of money for "home and foreign missions," and that the testator, James S. Shanklin, in his last will and tastament, intended to designate such board in his bequests to the the trustees of home and foreign missions of the Southern Presbyterian Church. Such trustees are before the court, asking that such will be executed according to its true tenor and effect, and yet the court, in disregard thereof, says : "When we refer to the charter of the North Carolina corporation, it is found 'the trustees of the General Assembly of the Presbyterian Church in the United States are authorized to take and hold all such estate and effects as might be acquired by gift, purchase, devise, or bequest, to aid and enable said General Assembly of the Presbyterian Church to undertake and carry on the work of Christian education, foreign and domestic missions,' *etc.* So that it is easily perceived that, under the charter of this North Carolina corporation, there is no trustee of home missions or foreign missions." The corporation itself is the legal trustee of all funds for home and foreign missions. What further trustee is needed? It is an absurdity to say that a legally constituted board of trustees of home and foreign missions must have other trustees specially for such funds before they can take under a bequest to the trustees of such funds.

There cannot be the possibility of a doubt that the testator, not being aware of the proper designated church repository to receive such bequests, by naming the trustees of each of such funds, intended thereby the bequests to go to such body as was legally authorized to receive the same, being the appellants ; thus bringing his will in accord with the language used in the case of *Wilson* v. *Perry,* 29 W. Va. 197 (1 S. E. 323), to wit : "The general rule on this subject is that where the name or description of

the legatee is erroneous, and there is no reasonable doubt as to the person intended to be named or· described, the mistake ·will not defeat the bequest, and this rule applies as well to a corporation as to a natural person." In the case of *Ross' Ex'r* v. *Kiger*, 42 W. Va. 402 (26 S. E. 193), this Court held: "Where a bequest of money is made to a missionary society by a testatrix, designating the society by a mistaken name in her will, it may be shown by extrinsic testimony and surrounding circumstances what missionary society was intended." The reasoning in the case referred to is well adapted to the admitted existing circumstances and surroundings of the present case, but the conclusion reached is directly the reverse. The testator bequeathed his money to home and foreign missions, and designated the Southern Presbyterian Church, being the body to which he belonged, to be the vehicle of his bounty, and the trustees legally authorized by and for such church to take and hold such funds for the uses aforesaid, and these trustees are completely and fully established by the record to be the appellants. Nor is there anything in the laws or policy of the State of West Virginia that even militates against the donation of money to be expended for the religious and moral education of any people. If there is, the sooner such policy is changed the better it will be for the good name, fame, and integrity of the State.

*Affirmed.*