# CHARLESTON.

MORRIS' EX'R *v.* MORRIS' DEVISEES.

Decided December 8, 1900.

1. WILL—*Absolute Estate.*
    A will passing an absolute estate, not a limited one.    (pp. 433-435).

2. BEQUEST—*Trustee—Validity.*
    Religious Bequest: Where a testator was in life a trustee of

a fund for the payment of a salary of a minister of a specified church, and by his will acknowledged such trust as binding on him, and appointed trustees to hold, invest, and manage said fund, and pay its income on such salary, and bequeathed the fund to them for that purpose, the bequest is valid.   (p. 437).

3.  ACCEPTANCE OF A TRUST—*Estoppel.*

   Acceptance of a trust estops the trustee from denying the title of him for whom such trustee holds.   Such trustee can set up no claim to the property against the beneficiary under the trust.   (p. 437).

Appeal from Circuit Court, Monongalia County.

Bill by Morris' etxecutor against Morris' devisees.   From the decree, the executor appeals.

*Modified.*

Cox & BAKER, for appellant.

BRANNON, JUDGE:

George B. Morris, so well known over the entire northern section of this State as a distinguished doctor of dentistry, departed this life in Monongalia County on the 11th day of March, 1898, leaving quite a long will.   His only child died some years before his father, and the will disposed of his estate among his sisters and brothers and the children of his deceased sister.   Dr. Morris' wife died the 9th of April, 1896.   As his will disposed of a large estate, real and personal, and set up a trust in the executor to manage it for the long term of twenty years, and then to distribute it among the beneficiaries under the will, George C. Baker, executor of the will, very properly and prudently, looking to his own interest and safety as well as the interest of those interested under the will, brought a chancery suit in the circuit court of Monongalia County to obtain a judicial construction of the said will, and that court having passed several decrees, one giving construction of the will particularly, the said executor, as a further step of prudence, brought the case to this Court for its action thereon.   There seems to be no controversy in the case.   No party has filed any brief, or taken any position, or assigned any errors in the action of the circuit court, except the merely formal assignment of error by the petition for appeal filed by the executor.   There is really no controversy in the case.   The brief filed for executor does not

point out any error save a provision for the minister of the church specified below.

An important part of the said will is item second, which is as follows: "Item 2d. I will and devise all my real estate situate in the town of Morgantown, West Virginia, to my executor hereinafter named, to be held by him in trust, for the use and benefit of my two brothers, namely, John J. Morris and William L. Morris; and five sisters, namely, Sarah Ann Hall—dead —Eliza Dunham, Anna C. Hall, Mary E. Stewart and Olive M. Snider, which properties are to be held and controlled by the said executor for their benefit for a period of twenty years after the date of my death, the rents, issues and profits thereof to be paid over annually to my said brothers and sisters equally, and in the event of the death of any one of them then to his or her heirs respectively, after deducting all taxes, repairs, premiums on insurance, improvements or any and all other expenses of every kind paid out by my said executor thereon, except that of the rooms of the second story of the building now occupied by me, * * * * and the residue of my real estate in the said town shall be in charge of, management and control of my said executor, to be rented, used and occupied as he shall deem best for the interests of my estate, with the right to said executor to make such leases therefor as he shall deem best, and at the end of said term of twenty years then my executor shall, as soon as practicable thereafter, make sale of my said Morgantown property, at public or private sale, and on such terms as he shall deem best, and leaving it entirely to his judgment how the property had better be sold or partitioned and then sold, or sold as a whole, and on such terms of sale as to time, which shall in his opinion cause the same to bring the most money, and I authorize him to make and execute, acknowledge and deliver deed or deeds to respective purchasers therefor, and the proceeds arising therefrom shall be equally divided among my said brothers and sisters, or in the event of one or more of them being dead, then his or her children shall stand in the shoes of his or her father or mother, as if no such death had occurred."

There seems to me to be no difficulty in the construction of this important section of the will. Questions may be raised about it, it is true, as questions can be raised about any writing; but in this case, it seems to me, no question of construction of gravity can be raised. Intent of the testator, his purpose, is the

thing to be looked at. It has been well and often said in the courts that adjudicated cases seldom have potential force in the construction of wills; because intent of the testator is the polar star of guidance in each case. The brief of counsel for the executor propounds several questions to this Court:

1. "What persons or class of persons take under this item or section?"

2. "What do these persons or class of persons take?"

3. "When do these persons or class of persons take?"

As I understand it, the question aimed at is whether the living brothers and sisters, John J. Morris, William L. Morris, Eliza Dunham, Ann C. Hall, Mary E. Stewart and Olive M. Snider, and the children of Sarah Ann Hall, deceased, take only a limited estate, that is a life estate, with remainder to their heirs, or take an absolute estate under the will. The answer is that by the will at the testator's death the living brothers and sisters and the children of the dead sister, Sarah Ann Hall, took at once, under this section of the will, an absolute estate in the properties therein specified, an equitable fee simple, as beneficiaries under that section, and as incident thereto the right to dispose of their estate under said section by will or transfer of any kind, with the right to consume the same, subject to the trust imposed upon the executor by said section of the will; in other words, such estate or property as that second item or section of the will vests in those brothers and sisters and Hall children was not merely a life estate, not an estate limited to their lives without the power of disposition or perfect use, but a full, absolute, estate—a fee simple vested in them as *cestuis que trustent*—without any right vested in their heirs or children at the testator's death by force of his will. Said will, under this clause, gave the children or representatives of the living brothers and sisters of the testator, and of the children of Sarah Ann Hall, no right or estate whatever. Counsel seem to think that when this section of the will uses the language, "in the event of the death of any one of them, then to his or her heirs," the testator meant only to refer to the contingency of the death of the devisees prior to his own death. I do not think so. I think he meant their death at any time; but I do not think that by the use of that clause the testator intended to detract from the fullness of the gift and benefit conferred upon his devisees by this section of the will. He did not use the words quoted

above with that purpose. He merely meant to declare that in case of such death the interest vested in such devisee at such devisee's death should pass to his heirs, as prescribed by law; he meant only to say that the devisee's right remaining in him at the devisee's death should pass under his will or by the law of descent. The testator meant to give said named devisees at once and absolutely what said section does give them, subject only to the trust in the executor of management and control for the period of twenty years, a trust erected by the testator to prevent immediate waste or for some reason which he has not expressed. He gave these devisees only the rents and profits during the twenty years, and at the close of that term gave them possession, full legal estate and fruition; but he gave their heirs not a shadow of vested right. If one of those devisees should die intestate, his heirs would take by law, but not by force of the will of George B. Morris. Now, it may be that George B. Morris intended by this trust to restrain the power of alienation, during the twenty years, by the devisees, so that they should during all that term be sure of a living from such rents and profits, against all vicissitudes of waste or improvidence; but if so, he has not said so, and though we must always seek a testator's intention, still that intention must be gleaned from the words of the will, and we cannot guess or surmise as to what might have been his intention; we cannot guess "what the testator meant to express," but we must say what the words used express. *Pack v. Shanklin,* 43 W. Va. 304. Now, did the testator intend to entail the devisees to his kindred for the long term of twenty years, taking away from them the full fruits of his gift? He has not said so in plain words. That might be the case as to one brother of improvident, wasteful nature, if such brother there were, or if such husband of a female devisee there were; but would we think so as to the large number of brothers and sisters and the children of the dead sister? In this connection we must not forget a presumption that presents itself, and that is, that unless a will plainly creates a perpetuity, or takes away the power of alienation, or otherwise detracts from the full and immediate enjoyment of the thing given, the will will not be construed to do so. 2 Lomax Dig. 308 (234). "The rule of the common law against perpetuities is one of the instances wherein the living principles of the unwritten common law of England, through the forming power of an independent judiciary, has grad-

nally shaped itself into an essential muniment and safeguard of social life, and of successful industry, in not allowing the conceits or fancies of dying men, unwilling to loose their hold upon the brief empire which property allows the living, to embarrass and control the generations still possessing the functions of active life, by the tightening grasp of exclusive self-love." Redfield, Wills, part 2, ch. 17, s. 73, p. 845. Of course, nothing here said is intended to impair the trust under said will. Understanding the decree of the circuit court constructing the second item of the will as in accordance with the opinion of it just expressed I see no error in the decree touching said second item. That decree adjudged that under that item John J. Morris and William L. Morris, Eliza Dunham, Ann C. Hall, Mary E. Stewart and Olive M. Snider, each, and A. B. Hall, M. T. Hall, S. K. Hall, Maude B. Kendall and Melissa H. Guinn, children and heirs of Sarah Ann Hall, deceased, together, upon the death of George B. Morris took an absolute and vested equitable estate in the undivided seventh part of the property mentioned in said second item, and in the proceeds of its sale, if made by the executor, and in the income, rents, issues and profits of said property for twenty years after the death of said Morris, and that such estate in said devisees is free and unshackled from any vested interest in the heirs of said devisees, subject to said trust, that part of the decree is affirmed.

Next as to item third. This item devised to the executor for the use and benefit of said brothers, sisters and nephews and nieces said Morris' Pittsburg and California property and all other real estate, except that in Morgantown, for said use as he should deem best, with discretion in the executor to sell it; but until such sale the same and its rents, issues and profits should be paid over annually to "my said brothers and sisters equally, or to those who stand in their respective shoes, if any are dead; and in the event my executor shall deem it best to make sale of any or all of said property named in this clause, he is directed to invest the proceeds as he shall deem best for my estate, and the interest and income on the proceeds thereon shall be paid by him to my said brothers and sisters as aforesaid, or to their respective heirs up and until the twenty years after my death aforesaid, and at the expiration of said period then all of my estate not specifically devised in this will to other parties shall be reduced to money as soon as may be and divided equally as

aforesaid." I see no need of a separate discussion of this item, because what is said above as to the second item applies to this item. I may remark, however, that this third item gives the executor power to make sale of the property mentioned in it at any time, but the second item gives this power as to property mentioned in it only after twenty years from the death of the testator. I understand the circuit court to so hold.

As to the fourth item of the will nothing need be said. It devises certain bank stock, notes and bonds to the executor upon the trust indicated above, and under it the same persons take an immediate and absolute estate, free of any remainder to their heirs, subject to said trust, which estate vested in the legatees under said fourth clause at once on the testator's death.

Nothing need be said of the other clauses of this will, except the clause in it touching the provision to help to support the minister of the Methodist Protestant Church at Morgantown, which I will discuss below; for, with that exception, I see no error in the decree, and none has been pointed out.

The will recites that the testator's wife had one thousand six hundred dollars at her death, and requested her husband to keep it while he lived, and to pay Levara Triplett, her sister, an annuity of fifty dollars, and if her daughter, Annie Triplett, should survive her mother, then to pay her daughter, Annie Triplett, a life annuity of fifty dollars, and, at the demise of both of them, the principal should be "forever invested for the use of the Methodist Protestant Church at Morgantown, and the income therefrom paid annually on the preacher's salary forever"; and then the will bequeathed the principal, one thousand six hundred dollars, out of the personal estate to Professor Thomas C. Miller, William H. Bailey, and Dr. W. C. Kelley, appointing them trustees to keep the money invested forever by them and their successors "for the use and purpose of helping pay the pastor's salary of the said Methodist Protestant Church at Morgantown forever." Is this provision void? The decisions go very far to overthrow devises and bequests for religious purposes. I do not understand that this is because there is any statute affirmatively invalidating them, but such decisions have so held, because of the uncertainty of the *cestui que trust* under such a devise. I do not intend in this holding to impugn the many decisions upon this subject but I wish to be understood as deciding this case, as to this provision, on the following grounds specially applicable

to it. The testator received this money upon a trust, which trust he held sacred and binding upon him, as will appear from the above quotation from his will, and much more so would it appear upon reading the scrupulous provisions, not quoted, made by that will for the preservation and payment of the income of the fund. Doctor Morris would have been entitled to this money as distributee of his wife, had he not accepted it from her upon the trust aforesaid. He held it in trust, repudiated any individual claim to it, made it a first charge as a demand against his estate. Could he have repudiated the trust in his life-time? Can his executor after his death? I think not. "The trustee can only do with the trust property what the deed in express terms or by necessary implication authorizes him" *Crumlish* v. *Railroad Co.*, 32 W. Va. 244; *Atkinson* v. *Beckett*, 34 *Id.* 584. "Acceptance of the trust estops the trustee from denying the title of the person for whom he holds." "Under no circumstances can a trustee claim or set up a claim to the trust property adverse to the *cestui que trust*. Nor can he deny his title." 1 Perry on Trust, ss. 260, 433. Here the testator appointed trustees and gave them legal title. I do not forget or overlook that in *Pack* v. *Shanklin*, 43 W. Va. 304, a bequest for a pastor's salary was held void; but in that case the testator was not himself a trustee antecedent to his will, whereas Morris was a self-acknowledged trustee, and his will solemnly declares and executes that trust. Nor do I forget that it may be said that though Morris did accept such trust, and did provide for its execution by his will, yet there is no legal certainty as to who is the beneficiary under the trust, no pastor named. I know that in the creation of a trust by will or deed the beneficiary must be a definite, certain, ascertainable person, natural or corporate, else the trust is not enforceable. *Brown* v. *Caldwell*, 23 W. Va. 187, 193; *Association* v. *Hart*, 4 Wheat. 1, cited in *Pack* v. *Shanklin, supra; Gallego* v. *Attorney General*, 3 Leigh 465; *Carskadon* v. *Torreyson*, 17 W. Va. 45. But it does seem to me, as this bequest is not to the congregation, but to trustees appointed by the will, and that the pastor of the Methodist Protestant Church at Morgantown is a church officer placed in charge and pastorate of a definite church by the legitimate authority of that church, such trustees could have no difficulty in ascertaining the beneficiary, because he is no other person than the incumbent of the position of pastor of that church. I will not venture the assertion that this

holding is unquestionably clear, in view of the decisions upon the subject; I know there can be two opinions upon it; but our decision is just, and accomplishes the just end of Doctor Morris. I do not see any just reason why the minister of the church should not receive what is in a hand for his benefit extended by Doctor Morris himself under a trust binding on him. No one is contesting it. Reversing so much of the decree of the 16th of February, 1900, as declares void the bequest for the benefit of said pastor, and holding that bequest valid, we affirm the said decree in other respects, as also the decree of June the 29th, 1899.

*Modified.*