# CHARLESTOWN.

BIBLE SOCIETY *v.* PENDLETON, TRUSTEE.

August 22, 1873.

1873.
August Term

The will of M. C., who lived and died in Berkeley county, Virginia, in 1854, and which will was admitted to probate in said county, in 1855, contained this clause, viz:

*First,* I have subscribed two thousand dollars towards the founding of an academy in or near, the town of Martinsburg, to be under the control and direction of the Presbytery of Winchester, (Old School), which, if not sooner paid by me, I hereby direct my executor, first of all, to pay out of the proceeds of the aforesaid land (referring to land in Pennsylvania), as soon as the same may come into his hands, to such person or persons, as the said Presbytery may authorize to receive the same, the sum of $2,000.

*Second,* I give to the trustees of the Presbyterian Congregation at Martinsburg, (Old School), the sum of $3,000 to be applied by them towards the purchase of a lot, and the erection thereon, of a house, or the purchase of a house and lot and fitting the same for the residence of the pastor of the said Congregation.

*Third,* To the trustees of the Board of Foreign Missions of the Presbyterian Church in the United States of America, the sum of $500, to be applied to the uses and purposes of said Board and under its direction.

*Fourth,* To the trustees of the Board of Missions of the General Assembly of the Presbyterian Church in the United States of America, towards the fund for super-annuated ministers and their families, the sum of $500.

*Fifth,* To the trustees of the Board of Missions of the General Assembly of the Presbyterian Church in the United States, the sum of $500.

*Sixth,* To the American Bible Society, formed in New York in the year 1816, I give the sum of $500, to be applied to the charitable uses and purposes of said society.—HELD:

That the foregoing bequests are void, under the statutes of Virginia, and the decisions of her Courts.

M. C., living in Virginia, makes a deed conveying land in Pennsylvania to P., to be sold, and directing that the proceeds of said sale

1873.
August Term.

be held by the grantee, subject (in substance) to the written order of said grantor; M. C. subsequently makes a will, disposing of the proceeds of said land, which will is admitted to probate in Virginia, in 1855.—HELD:

That the validity of any bequest of said proceeds must be determined by the laws of Virginia in force when the will took effect.

An appeal by James S. Brown and Ann R. Morgan from a decree of the circuit court of Berkeley county, rendered on the 4th day of September, 1871, in a suit pending in said court, wherein the American Bible Society and the Board of Domestic Missions of the General Assembly of the Presbyterian Church of the United States of America were complainants, and Robert Berry, James S. Brown, William A. Morgan and Ann R. Morgan, his wife, the Board of Foreign Missions of the Presbyterian Church of the United States, James A. Graham, Stated Clerk of the Winchester Presbytery, Edmund Pendleton, John M. Harmon, Seaman Gerard, William N. Riddle and E. Boyd Pendleton, trustees of the Presbyterian Church of Martinsburg, and the Trustees of the General Assembly of the Presbyterian Church of the United States, were respondents.

It is believed that the opinion of the Court contains a sufficient statement of the facts and statutes therein referred to, and of the provisions of the will, the validity of which was in issue in this suit.

The Hon. Ephraim B. Hall, judge of said circuit court, as organized under the Constitution of 1863, presided at the trial below.

*C. W. B. Allison* and *Andrew Hunter* for appellants, *Charles J. Faulkner* for appellees.

PAULL, Judge :

Maria Cooper, residing in the town of Martinsburg, in Berkeley county, State of Virginia, made and executed her last will and testament, bearing date on the 30th day of June, 1854, and executed a codicil thereto, bearing date on the 20th day of October, 1854. This

will and codicil were duly admitted to probate in the circuit court of said county, on the 11th day of January, 1855.

.The 11th clause in said will is as follows, to-wit: "*Eleventh.* I have conveyed my land in Pennsylvania to Edmund Pendleton, in trust, for the purposes set forth in the deed of conveyance thereof, to be held subject to such disposition as I may make of the same, or the balance of the proceeds thereof, as set forth therein. Now I hereby will and direct that the said trustee, Edmund Pendleton, shall pay over the balance of said proceeds, when received by him, to my executor, to be disposed of by him as follows, viz:

*First.* I have subscribed two thousand dollars towards the founding of an academy in or near the town of Martinsburg, to be under the control and direction of the Presbytery of Winchester, (Old School), which, if not sooner paid by me, I hereby direct my executor, first of all, to pay out of the proceeds of the aforesaid land as soon as the same may come into his hands, to such person or persons as the said Presbytery may authorize to receive the same, the sum of $2,000.

*Second.* I give the Trustees of the Presbyterian Congregation of Martinsburg (Old School) the sum of $3,000, to be applied by them towards the purchase of a lot and the erection thereon of a house, or the purchase of a house and lot and fitting the same for the residence of the pastor of the said Congregation.

*Third.* To the Trustees of the Board of Foreign Missions of the Presbyterian Church in the United States of America, the sum of $500, to be applied to the uses and purposes of said Board, and under its direction.

*Fourth.* To the trustees of the Board of Missions of the General Assembly of the Presbyterian Church in the United States of America, towards the fund for superannuated ministers and their families, the sum of $500.

*Fifth.* To the Trustees of the Board of Missions of the

1873.
August Term.

Bible Society
v.
Pendleton,
Trustee.

General Assembly of the Presbyterian Church in the United States, the sum of $500.

*Sixth.* To the American Bible Society, formed in New York in the year 1816, I give the sum of $500, to be applied to the charitable uses and purposes of said society:

*Provided,* That in the event the proceeds of said lands shall prove insufficient to pay the whole amount of the several legacies herein devised, then I direct my executor to appropriate the said proceeds of the said lands, *first,* to the payment of the whole amount of the $2,000 heretofore devised in the first item of legacies out of the proceeds of said land; *second,* the sum of $3,000, devised for parsonage; and the remainder to be divided *pro-rata* between the other legacies provided for out of this fund.

I further will and order, in the contingency of any failure or defeat of the bequests herein made, or any part thereof, the amount or amounts directed to be paid by said executor, and all the rest and residue of my estate not heretofore devised, shall be divided equally between James S. Brown and Mrs. Ann R. Morgan.

By the codicil to the will, it is directed that $500, of the $3,000 before appropriated to the purchase of a parsonage, be paid to the Rev. Robert Berry, pastor of that church; and the balance of $2,500, be applied to the purchase of the house, in which the testatrix then lived, for a parsonage.

On the 17th day of December, 1852, the said Maria Cooper executed and acknowledged for record, a deed bearing date on the day and year aforesaid, by which she conveyed to Edmund Pendleton, as trustee, a certain tract or parcel of land, containing about four hundred and twenty-five acres, situated in Venango county in the State of Pennsylvania, to be sold by said trustee; and the proceeds of such sale, after deducting all the expenses of executing the trust, to be held by him, "sub-

1873.
August Term.

Bible Society
v.
Pendleton,
Trustee.

ject to such disposition as the said Maria Cooper, by deed or other instrument of writing, may hereafter direct.

In the year 1868, the complainants in this cause filed a bill in chancery, in the circuit court of Berkeley county, making all the parties interested under the 11th clause in said will, parties thereto, setting forth the execution and probate of said will, and claiming that if the devises or bequests therein made, under said 11th clause, for charitable and religious uses, should be held, under the statutes of this State, or by the laws of Virginia, where the testatrix lived and died, invalid, that still their validity would be determined by the laws of Pennsylvania, where the land was situated, from the proceeds of the sale of which these bequests have to be paid. The bill then prays for an account of the proceeds of the sale of this Pennsylvania land, in the hands of Edmund Pendleton, and that the several legacies, above set forth, may be decreed to the parties to whom they have been bequeathed.

James S. Brown and Ann R. Morgan, the residuary legatees under the will, file their answers denying the validity of said bequests, and asking that the proceeds of said land be paid to themselves.

An answer being also filed by Edmund Pendleton, the trustee, the cause was committed in February, 1869, to a master commissioner to take, state and report an account of the moneys in the hands of said trustee : a report having been made, and exceptions filed thereto, the cause was recommitted, in November, 1869, with instructions as to certain matters in the decree specified. In May, 1870, the cause was again heard upon the report of commissioner, and the exceptions thereto, and the court deciding that all of the foregoing bequests were invalid except the one to the trustees of the Congregation of Martinsburg, for a parsonage, again recommitted the report. with instructions touching certain matters of interest.

1873.
August Term.

Bible Society
v.
Pendleton,
Trustee.

On the 4th day of September, 1871, a final decree was entered in this cause, reciting that the same was made upon the papers formerly read and the report of the commissioner, ascertaining the balance in the hands of Edmund Pendleton, the trustee ; that said balance was $2,672.12, with interest from the 14th of August, 1870 ; and there being no exceptions to said report, the same was confirmed. The decree then directed said trustee, after paying the costs and expenses of this suit, and $4.37½ on account of other matters, to pay over the residue as follows, to-wit : five-sixths thereof to the trustees of the Presbyterian Church at Martinsburg (Old School), and one-sixth to the Rev. Robert Berry.

From this decree, thus rendered on the 4th of September, 1871, the residuary legatees, James S. Brown and Ann R. Morgan have taken an appeal to this court.

Before examining the principles involved in this decree, settling the rights and interests of the parties, we are met by a question raised by the plaintiffs, of a preliminary character. From a supplemental record brought before the Court at its present term, on a *certiorari* issued at their instance, it is insisted by their counsel, that certain exceptions filed to the commissioner's report of May, 1870, have not been disposed of, and claiming that they shew error in the trustee's accounts, it is asked that the final decree be reversed and the cause recommitted. This objection, we think, cannot be maintained. The report was recommitted in May, 1870, and fifteen months after that time, the final decree is made, reciting that the cause was heard on the commissioner's report, to which there were no exceptions and the same was confirmed. In making up the record with a view to an appeal, it is not necessary to copy the report of a commissioner to which there is no exception. Ch. 135, sec. 6, Code W. Va.

With this recital and evidence found in the final decree, this Court must regard all former exceptions as

1873.
August Term.

Bible Society
v.
Pendleton,
Trustee.

withdrawn or abandoned, and will not make them the subject of examination.

Proceeding now to notice the questions touching the validity of the bequests made by the 11th clause in the will of Maria Cooper, the first inquiry is, by what laws shall their validity be determined?—by the laws of Pennsylvania, where the land was situated, from the proceeds of which these legacies are to be paid, or by the laws of Virginia, where the testatrix lived and died, and where her will was made and admitted to probate.

This question was elaborately discussed by the counsel on either side. We think the question can be readily and conclusively settled by referring to the nature of the deed from the grantor to Edmund Pendleton, dated December 17, 1852. It will be there seen that this land in Pennsylvania was conveyed to the grantee with instructions to sue for and recover the same ; to adjust any claim of the grantor thereto, and then to sell said land at public or private sale, and after paying all expenses arising under said deed, to hold the balance, "subject to such disposition as the said Maria Cooper, by deed or other instrument of writing, may hereafter direct." It is with this balance of the proceeds of said land that this case has anything to do : and as to this balance, the deed creates no trusts whatever, but simply directs the grantee to hold the same, subject to the written order of the grantor, as its language may be well construed or read. The grantor might have made this order in her lifetime to pay over these proceeds either to herself or to any other person or party, or she might dispose of the same by her last will and testament. She had complete control and dominion over the proceeds of this land, and when the same were realized, or came into the possession of the grantee, they were a part and parcel of her personal estate just as fully, and were impressed with no other quality or property, than if

1873.
August Term.

Bible Society
v.
Pendleton,
Trustee.

they had been received from the sale of lands in Virginia. The will directs the payment of certain legacies, and simply designates the proceeds of this land as the fund or portion of the personal estate out of which they should be paid. Most manifestly therefore, the laws of Pennsylvania can have no operation and can have no influence in construing the language of this will, or determining the validity of any of its dispositions touching this fund. They can no more control or determine the direction of this fund than they can control or direct the movements of a stream, whose source indeed may be within the limits of that State, when it comes to flow exclusively within the limits of Virginia. Turning then to the laws of Virginia, where this will was made, and where the testatrix resided: Are these bequests valid?

We are not informed by any thing in this record, by the bill or answers, or any other pleading, or by any evidence whatever found therein, who or what the parties are, whether natural persons or corporations, to whom bequests have been made under the 11th clause of the will. It is claimed indeed in the bill that the plaintiffs have been incorporated by the Legislature of Pennsylvania; but no evidence of the fact appears in the record. We have as little information, moreover, as to who are to be the beneficiaries of these respective bequests; who shall find, or who shall determine them; they are not named in a form or manner by which they can be ascertained with any certainty, and thereby be made the recipients of the bounty of the will. These indefinite charities, however it may be in other states, have in Virginia been held invalid at common law, by her highest court, and since the repeal of the Statute of 43, Elizabeth, by her Legislature, been held incapable of execution. The want of clearly recognized grantees, or clearly recognized beneficiaries, constitute the indefinite character of these charities, and render them void at common law. This doctrine is clearly set forth and in-

1873.
August Term.

Bible Society.
v.
Pendleton,
Trustee.

dicated in the able opinion of Judge Tucker, in the case of *Gallego's Ex'ors. v. Attorney General*, 3 Leigh, 450. Here also he reviews and vindicates the past legislation of that State, and the policy on which it was based, to prevent the possible interference of religious establishments in matters of government, if they were permitted to accumulate large possessions : "hence the tenacity with which applications for permission to take property in a corporate capacity, (even the necessary grounds for churches and graveyards) have been refused." His views are illustrated in this regard by a reference to the tremendous evils to be found in the history of France and of England from the vast accumulations of property in the hands of church establishments, and these views have ever since left their impress on the jurisprudence and history of that State. This may be seen in the fact, that in the amended Constitution of that State of 1851, it is provided for the first time, that the General Assembly shall not grant a charter of incorporation to any church or religious denomination. The authority of that case has been recognized, and has been affirmed, in the case of *Brooke vs. Shacklett*, 13 Gratt. 301 and *Seaburn's Ex'or. vs. Seaburn et als.*, 15 Gratt, 423.

According to the principles settled in these cases, the bequests contained in the 11th clause of the will of Marria Cooper, for educational and religious charities, are undoubtedly void, by reason of their indefinite character and uncertainty. This seems indeed to be conceded in the bill and was not controverted in the argument.

But it was contended by the counsel for the appellees, that the bequest for the Martinsburg academy was valid by virtue of section two of chapter eighty in the Code of Virginia of 1849, which was in operation when the will under consideration took effect. This section provides that any gift, grant, devise or bequest, which since the second day of April in the year one thousand eight hundred and thirty-nine, has been, or at any time

1873.
August Term.

Bible Society
v.
Pendleton,
Trustee.

hereafter shall be, made for literary purposes, or for the education of white persons within this State, (other than for the use of a theological seminary,) whether made to a body corporate, or unincorporated, or to a natural person, shall be as valid, as if made to, or for the benefit of a certain natural person : And we are referred to the case of *Kelly v. Loves' Admr.* 20 Gratt. 124.

In the will of the testator in this case, a devise was contained for the erection of a school house and the payment of a teacher, and the appointment of a board of commissioners for its management. The court declared that this devise was void at common law, but by virtue of the act of Assembly of 1839, in operation at the death of the testator the devise, was held to be valid. That act made valid devises and bequests for the establishment of unincorporated schools, academies and colleges. But there was this important difference between that act and the second section of chapter eighty of the Code of 1849. The latter section excepted from the operation of the Code a devise, or bequest, for the use of a theological seminary. This exception was not found in the act of 1839.

Let us see whether the bequest for the Martinsburg academy, in the will now under consideration, comes within the exception, supposing it to be otherwise good. The language is, that it is given "towards the founding of an academy in, or near to the town of Martinsburg, to be under the control and direction of the Presbytery of Winchester (Old School), and was directed to be paid, "to such person, or persons, as the said Presbytery may authorize to receive the same." It is suggested that the theological seminary contemplated by the Code, is an institution for the education and preparation of young men for the ministry. Conceding this to be so, such a purpose might be readily accomplished by an institution, whatever its name, "to be under the exclusive control and direction of the Presbytery," which would have the power of prescribing what should

1873.
August Term.

Bible Society
v.
Pendleton,
Trustee.

be the subjects of study and what classes, or persons should enjoy the privileges of the institution. We think the language of the will, in this particular, brings the bequest within the exception, and is contrary to the spirit and design of the act, and to the policy of the State of Virginia. If the institution, whatever may be its name, could accomplish what is forbidden by the act, the act itself is rendered nugatory. We may not rest principles of law, or the decision of the case upon what might readily prove a mere evasion of the statute. No such legislation is found in the Code of West Virginia, but this was the law of Virginia, when this will took effect. In the case in 20 Gratt., heretofore cited, the testator seems to have been so impressed with the policy of the State, or the wisdom of the principle, that he directed as follows: "That no one sect or denomination shall have any power or control over said school house," thus making himself a provision, which was not contained in the act of assembly at that time.

In regard to the bequest to the trustees of the Martinsburg congregation, the circuit court held the same to be valid, as recited in the decree, by reason of the conveyance made prior to the death of the testatrix. This is an effort to uphold the laudable object of the will under the first section of chapter fifty-seven of our Code, or a similar provision in the Code of Virginia. This is the only substitute we have for 43d. Elizabeth; upon examination we find that while it does authorize the conveyance of land for the residence of a minister, it is silent in regard to devises and bequests for this purpose. And it has been expressly held in Virginia, that the word conveyance in this section does not include a *devise* of land, and, *a fortiori*, that it does not authorize a bequest of money for this purpose. *Seaburn's Ex'or v. Seaburn*, 15 Gratt. 423. We presume the deed referred to in the decree, is the deed from the testatrix to Edward Pendleton. What we have heretofore said in regard to

1873.
August Term.

Bible Society.
v.
Pendleton,
Trustee.

the character of that deed, as being little else than a mere power of attorney to sell the land, and hold the the proceeds subject to the order of the grantor, will suffice to show that that deed is very far from fulfilling the requirements of the Code, and cannot be held a conveyance for such a purpose. In thus defeating the charitable purposes of this will, we may use the language of Judge Tucker : "It is not that charity is banished from Virginia, or from this State. Its benign and salutary influence may warm and animate every heart, and lead to a generous munificence, as the daily habit of our lives, without exposing the State to the evils which have always flowed from what are called conveyances in *mortmain.*" We may add, that it is not to dry up the streams of charitable feeling and action, but to control to a limited extent, the manner of their operation, for what has been deemed, in the policy of the law, sufficient reasons.

The decree of the circuit court of Berkeley county, made on the fourth day of September, 1871, is reversed, with costs to the appellants; and this court proceeding to render such decree, as the court below ought to have rendered, doth adjudge, order and decree, that Edmund Pendleton, trustee of Maria Cooper, deceased, do pay, out of the balance of two thousand six hundred and seventy-two dollars and twelve cents, with interest thereon from the fourteenth day of August, 1870, now in his hands, (after deducting therefrom the sum of four dollars and thirty-seven cents) unto Rev. Robert Berry, the sum of five hundred dollars, with interest thereon from the first day of November, eighteen hundred and fifty-five ; and that he pay over the residue of said money in his hands unto James S. Brown and Mrs. Ann R. Morgan, the residuary legatees named in the will of said Maria Cooper.

The other Judges concurred.

DECREE REVERSED.