# CHARLESTON.

WEAVER *et al. v.* SPURR *et al.*

Submitted June 9, 1904—Decided October 25, 1904.

1. TRUST DEED—*Trustee—Beneficiary.*
   A deed from H. to B. M. S. and I. S., trustees, conveyed certain real estate therein described, within two miles of the town of Moundsville, in Marshall county, "To be held by them in trust for Trinity Parish in the town of Moundsville, in the county of Marshall and State of West Virginia." In a suit in equity by W. and others, "Trustees of Trinity Parish Church of Moundsville," against B. M. S. and I. S., trustees, for the removal of said trustee B. M. S., and to have another trustee appointed in his stead and to have an accounting to the plaintiffs or the church they claimed to represent by the said B. M. S. for the receipts and expenditures in conducting the hospital for which said real estate had been used. *Held,* that the trust created by said deed was void for uncertainty, as well, as to the beneficiaries, as to the purpose of the trust. (p. 105).

2. TRUST—*Beneficiary.*
   In the creation of a trust by will or deed the beneficiary must be a definite, certain ascertainable person, natural or corporate, otherwise the trust must fail. (p. 105).

Appeal from Circuit Court, Marshall County.

Bill by Vinton A. Weaver and others against B. M. Spurr and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

R. M. RUSSELL and C. B. OLDHAM, for appellants.

J. W. EWING and ERSKINE & ALLISON, for appellee.

McWHORTER, JUDGE:

By deed dated the 7th day of April, 1897, Florence Maude Heiskell, the widow of Daniel L. Heiskell, conveyed to B. M. Spurr and Isabella Spurr, trustees, certain real estate therein described lying near the city of Moundsville, in Marshall county, in consideration of $7,000, retaining her vendor's lien for the deferred payments, amounting to $6,000, and interest represented by six notes of $1,000 each dated the first day of May, 1897, and made by the said vendees, payable on the first day of May of each year thereafter, the last falling due on the first day of May, 1903, interest on the several notes to be paid annually. The said property was conveyed with general warranty to the parties of the second part "To be held by them in trust for Trinity Parish, in the town of Moundsville, in the county of Marshall and State of West Virginia." At the November rules, 1902, Vinton A. Weaver, Friend Cox, John T. Gallaher, Charles R. Oldham, William S. Brady, A. J. Martin, C. A. Weaver, W. B. Snider and C. L. Walton, trustees of Trinity Parish Church of Mounsville, filed in the clerk's office of the circuit court of Marshall county, their bill in equity against B. M. Spurr and Isabella Spurr, alleging that there was and had for a number of years been in the town of Moundsville and county of Marshall a church of the denomination of Christians known as the Protestant Episcopal Church, which was and had been called and known as the Trinity Church, or Trinity Parish Church of Moundsville, that it had been organized and conducted according to the usual custom and rules of said denomination and as such had acquired and owned certain real property in said county of Marshall, which had been acquired for the proper purpose in connection with the work of said church and on one portion of their said real property there was erected a number of years ago, a church edifice or building and standing upon the same property in the town of Moundsville in which building the usual religious services had been, and were still being conducted by those connected with the church. On another portion of their said real estate there was erected a building which had been and still was used as a family residence for

the minister or rector in charge of such church and was known
as the rectory.  On another portion of said real estate in Mounds-
ville there was erected a building which had been since its erec-
tion, and still was, used as and was known as a Parish House;
the Parish House had a large number of rooms and was used as
a place for the meeting of the several committees of said church
organization, for a library, school room and for other purposes
connected with the church work, while certain rooms were set
apart for boarders; that the only other real estate in which the
church had any title or ownership was the property so conveyed
to the defendants by Mrs. Heiskill which was situate in the county
of Marshall and on which the Reynolds Memorial Hospital had
been built; alleging the appointment of plaintiffs by the circuit
court of Marshall county as trustees "of the said Trinity Parish
Church or Trinity Church, or Trinity Parish Episcopal Church
of Mounsville in said county of Marshall and State of West Vir-
ginia," and exhibited copies of the orders of said court showing
such appointment, and alleged that there was not, in the year
1897, and had not since been any other church, either in Mounds-
ville or in Marshall county or elsewhere, so far as plaintiffs knew
or believed, which was known as Trinity Church, or Trinity
Parish Church in the said town and State, except the church for
which they were trustees; that during and before the year 1897,
and since that time it was and had been customary to speak of
their said church as Trinity Church or as Trinity Parish at
Moundsville, West Virginia, and there had been no other church
organization or organization of any other kind or description
of which it had been or was customary to speak of as Trinity
Parish, in said town; that throughout the year 1897, and for
some time before and after that year the defendant, B. M. Spurr,
was the rector or pastor of said church of which plaintiffs were
trustees and that the defendant, Isabella Spurr, during the
same time was the wife of the said B. M. Spurr,
and that they resided together at the said rectory
and both of them took part in the work which was done in
furthering the objects and purposes of said Trinity Church;
that in the early part of 1897 said B. M. Spurr, as such rector
suggested and discussed the plan of acquiring the necessary
property for the purpose of building, equipping and conducting
for and on behalf of said Trinity Church, and as a part of its

work, a hospital for the care of the sick or injured persons who might need such care; that at a meeting of the vestry of said church held on the 30th of March, 1897, said defendant B. M. Spurr brought the matter of the proposed hospital definitely before the vestry, suggesting that the property known as the Dan. Heiskell property, which is particularly described in the deed from Mrs. Heiskell, should be purchased and that the building which was then upon the property should be so modified and improved as to serve properly as a hospital, and he then explained that it would be necessary to procure and expend a considerable amount of money in the carrying out of this project, and that he desired to have some formal action taken on the part of the vestry of said church; that in all that was said by the said Spurr at their said meeting it was assumed that the property when acquired and the hospital completed should be the property of said Trinity Church, and should belong to that church just as the other real property held by it; that after listening to the suggestions made by Spurr the vestry of said Trinity Parish at the said meeting of the 30th of March, 1897, while defendant Spurr was present, and with his concurrence and at his suggestion passed a resolution to the effect that the rector of said parish had the hearty moral support of said vestry in his plans for the establishment of a separate hospital building in the parish and his work in connection therewith, and that the vestrymen would join in the execution of the necessary notes or security for the purchase of property, if it should be found advisable; that in carrying out said plan defendant purchased the property and caused a deed for it to be executed and duly recorded which deed was made by Florence Maude Heiskell, widow of Daniel S. Heiskell, deceased, and devisee under his will, and exhibited a copy of the deed with their bill, and allege that the reservation of a vendor's lien for the payment of so much of the purchase money as was not paid at the time of the execution of the deed, and that the same had since been paid and the lien released; that Trinity Parish named in said deed as the beneficiary in trust was, and was intended to be the said church of which plaintiffs were trustees, and that it was the purpose and intent of the grantor of the said deed, and also of the defendants who took the legal title that the property conveyed should pass to the said church as the beneficial owner and as the owner of the equit-

able title thereto; that at a meeting of the vestry of said church held the 13th of April, 1897, said Spurr reported to the vestry that property had been purchased for hospital purposes and deed made to himself and his wife, in trust for the said church; that the said property lies to the north of, and within about two miles of said town and was easily accessible from said town and at a convenient location for a hospital to use in connection with the other work of the church; that said Spurr, acting and representing himself as the rector of said church and as furthering its interests, solicited pecuniary aid from a number of persons for the purpose of extending and improving the building which was upon the property, and of finishing the said building and establishing it as a hospital, and that in response to such solicitatiõns a considerable amount of money was obtained for said purposes from charitably disposed persons at various places and the money was applied to the purposes of completing and equipping the said hospital; that the additions and improvements thereto and the furnishing thereof had been paid for out of the money so obtained after which the building was put to the uses for which it had been prepared and since that time had been used as a hospital for the care of the sick and other persons requiring the care and attention usually given at such institutions; that after the hospital had been put into complete shape and had become known as the Reynolds Memorial Hospital, and after it had been for some time conducted in the manner in which hospitals are usually conducted, and in the latter part of 1901, the said Spurr ceased to be the rector or pastor of said church, for which plaintiffs were trustees and had not since that time been such rector or pastor; that up to the time he ceased to be rector the care and management of said hospital had been almost exclusively in his hands. the vestry of said church having relied upon him to exercise the proper care and management for them of said hospital and its conduct in the same manner in which the vestry had committed to the said Spurr the management while he was rector the management of the services conducted in the church edifice, the care and management of the parish house and matters which were conducted and attended to therein; that after he ceased to be rector he ceased to reside in the rectory and ceased to have control or managment, and ceased also to have the care and management

of the church edifice or of the church services conducted therein; that instead of surrendering his management and control of the hospital at the time he surrendered the management and control of the parish house and the rectory and the church edifice, and the matters connected with them, he took up his residence in said hospital building and had since been residing therein without any right or authority so to do, not only so but he had also persistently retained exclusive control and management of said hospital and its work, and refused to permit plaintiffs as trustees of said church, or the vestry of said church or any other person or persons connected therewith either to have possession of said hospital building or the real property upon which it was situated or to have anything to do with its management or control, but had treated and controlled the hospital as though it were a private institution, the ownership of which was in himself; that in the conduct of the said hospital it was customary to receive and care for patients and make charges against them for the accommodations given them, and with the receipts from such charges to pay the expenses of caring for and the management of the hospital, and of the accommodations furnished the patients; that since defendant Spurr had ceased to be rector of said church he had collected and received from patients from time to time large amounts of money out of which he had paid the expenses of conducting the hospital, but the residue over and above the expenses had been retained by him instead of being turned over as it should have been to the plaintiffs, trustees, and that during the said period since he ceased to be rector he had not in any wise accounted to plaintiffs or to said church for any of the receipts from said hospital, and had rendered no account of his expenditures with respect to the same; that out of such receipts he has paid his own living expenses and had used portions thereof in paying other personal expenses of his own; that plaintiffs were advised that they as trustees of the church were entitled on behalf of the church to the possession and control of the hospital and the building in which it was conducted, and the property on which the building was situated and have possession and control thereof and had the right to have the said Spurr account to them for his receipts from said hospital, and to have him surrender to them, as such trustees and for the benefit of said

church, the possession and control of said hospital and of said property; that the said deed created a naked trust in said defendants giving them no rights in the property conveyed, except a bare legal title, which was to be held by them for the benefit of the church, and that neither as one of the trustees in said deed nor otherwise had said Spurr any right whatever, to the possession, management and control of the hospital and property; that the conduct of said Spurr, as set forth in the bill had been such as to make it proper that he should cease to be a trustee with respect to it, and as provided for in the said deed; that he should cease to be permitted to retain the legal title or an interest therein in the said property, but that under decrees of the court the legal title should be taken from said Spurr and transferred to and vested in another and different trustee who would properly hold the legal title or interest therein for the benefit and advantage of the plaintiffs and for said church; that when said Spurr ceased to be rector of said church he and his said wife ceased to live together as husband and wife, and have since been living separate and apart from each other; that since said separation Spurr ceased to be rector and his wife as one of the trustees had had no possession or control over the said hospital or property upon which it was situated, and that she was ready and willing on her part to recognize the equitable rights of plaintiffs, but that defendant B. M. Spurr, declined and refused to surrender to plaintiffs or to said church the possession or control of the hospital or to recognize in any way their equitable rights therein, and prayed process against said defendants, and that they be required to answer the bill under their several and respective oaths, and for an accounting by the said Spurr to plaintiffs on account of the receipts and expenditures in the conduct of said hospital while he had been in control thereof, and that he be required by decree of the court to surrender possession and control of the hospital and the property upon which it was situated to plaintiffs and that such orders and decrees be made as might be necessary to vest that portion of the legal title of said property standing in the name of B. M. Spurr to some other person as trustee to hold the same in trust for the said church, according to the provisions of said deed, and for such further relief in the premises as to equity might seem meet and the nature of the case require.

The defendant, B. M. Spurr, by his counsel filed his demurrer to said bill alleging as grounds therefor; that it was apparent from the allegations of the bill that all necessary parties had not been made parties to the suit; that the bill if true, which defendant did not admit, contained no matter or equity whereon the court could ground any decree or give plaintiffs any relief or assistance as against the defendant; that plaintiffs had no interest in the Glendale real estate described in the bill and had no right to institute a suit concerning it; that plaintiffs had no interest in the alleged trust created by the deed and had no right to call on demurrant for anything concerning that trust; that so far as the deed purported to create a trust the trust was void, both for uncertainty as to the character of the trust and for uncertainty as to the beneficiary intended thereby and therefore as a matter of law the persons who contributed the money that purchased the said real estate and erected the hospital were the real owners of said real estate and the only persons who could call on demurrant for an accounting or for any possession or control of said real estate; that it did not appear from the bill that any of the persons so contributing had been made parties to the suit or that defendant had failed in any way to make due accounting to those persons, or that those persons desired any relief whatever, that it appeared from plaintiff's bill that they were acting wholly as trustees of a church claiming the possession and control of real estate not used as a place of public worship or as a burial place or as a residence for a minister, whereas a church through its trustees or otherwise had no authority under the law to hold any real estate whatever, except for use as a place of public worship or as a burial place, or as a residence for a minister, and that it appeared from the said bill that the said real estate at Glendale was acquired for hospital purposes, for which purposes a church could not acquire property, and that therefore the church through its trustees could not maintain this suit.

The cause was heard on the 25th of July, 1903, upon the bill and exhibits and upon the separate demurrer thereto, filed by the defendant, B. M. Spurr, and the matters of law arising upon said demurrer, "And the court being of the opinion, and so finding that the exihibited deed of Mrs. Heiskell is inoperative by reason of uncertainty as to the beneficiary and also as

to the character of the trust, if for no other, to confer upon the plaintiffs the right to maintain the present suit, the said demurrer is hereby sustained and said bill adjudged not to be sufficient in law," and decreed a dismissal of the bill, and the plaintiffs not desiring to amend, judgment was rendered against them for defendant's costs.

Plaintiffs' exhibit with their bill copies of two orders: the first dated February 3, 1902, entered by the circuit court of Marshall county on the petition of John T. Gallaher *et als.,* "Vestrymen of Trinity Protestant Episcopal Church of Moundsville, West Virginia, which said petition is also signed by thirty-four of the members and contributors to the support of said church and supported by affidavits that the said petitioners constitute more than a majority of the vestry and active congregation of said church," and appointed nine persons named "Trustees for said church, no trustees having heretofore been appointed for said church," and another order of said court dated July 31, 1902, upon petition and motion for change and substitution of others for a part of the trustees so before appointed, which order shows that the proceedings were had under sec. 4 of ch. 57 of the Code, and the order substituted others who were plaintiffs in this suit for four of the trustees formerly appointed. It is not contended that the plaintiffs or any of them were trustees of the property in controversy, nor is it alleged or contended that the plaintiffs, or the church for whose benefit they sue, contributed any part of the large sum of purchase money paid for the Glendale property, now used for hospital, nor is it disclosed in the bill where the money came from which paid the purchase money for the property. It is alleged, however, that out of moneys collected by the defendant Spurr, from patients in the hospital he paid the expenses of conducting the hospital. It does appear from the bill and exhibits that the purchase money of $7,000; $1,000 of which was paid in cash at the time of making the deed and the residue was represented by six notes of $1,000 each, made by the said B. M. Spurr and Isabella Spurr, trustees, and it is alleged that the whole purchase money had been paid, and the lien reserved on the property had been released. Section 1, chapter 57, Code, provides what lands may be held for the use or benefit of any church, religious sect, society, congregation or denomination

"As a place of public worship, or as a burial place, or as a residence for a minister," and provides that the land shall be held for such purpose and no other. It appears that plaintiffs hold certain real estate in the town of Moundsville upon which were erected a church edifice, a rectory or parsonage and another building called a parish house, which property is held by them under said chapter 57 of the Code for the purposes therein designated and is located some two miles distant from the property in controversy. They do not ask to be substituted as trustees for said property, but that some other person may be substituted in the place of the defendant, B. M. Spurr, who will account to plaintiff or to the church they represent, for the conduct of the said hospital and for the moneys received and for the expenditures thereof. It is not alleged in the bill that the defendants have not accounted for their receipts and expenditures to those who furnished the money to pay for the property and to pay the expense of equipping and conducting the hospital. The only language contained in the deed from Mrs. Heiskell to the defendants Spurr, implying the creation of a trust are the words "To be held by them in trust for Trinity Parish in the town of Moundsville in the county of Marshall and state of West Virginia," and nothing further to indicate the purpose of the trust. It is sought by the bill to explain what is meant by "Trinity Parish." There is nothing upon the face of the deed to indicate the purpose of the trust or whether Trinity Parish means a church, as defined "A religious congregation comprising all those who worship together in one church;" or the more general definition, the district in which such worshipers live. So the beneficiary in said deed is "Trinity Parish" whatever that may mean. In section 297, 1 Green. on Evidence, the writer quotes from Lord Bacon: "There be two sort of ambiguities of words; the one is *ambiguitas patens* and the other *latens*. *Patens* is that which appears to be ambiguous upon the deed or instrument; *latens* is that which seemeth certain and without ambiguity for anything that appeareth upon the deed or instrument; but there is some collateral matter out of the deed that breedeth the ambiguity. *Ambiguitas patens* is never holpen by averment; and the reason is because the law will not couple and mingle matter of specialty which is of the higher account with matter of aver-

ment which is of inferior account in law; for that were to make all deeds hollow and subject to averments and so in effect, that to pass without deed which the law appointeth shall not pass but by deed."

In case at bar there is nothing on the face of the deed to indicate the purpose of the trust attempted to be created, the ambiguity and uncertainty is patent upon the face of the deed, and under the doctrine laid down it cannot be helped by averment. The allegations of the bill are that the trust is for the benefit of the church they represent, these allegations are not supported by the deed, and even if that were clear they do not make it appear that they were authorized by the church to institute or prosecute the suit, and it is not alleged that defendant B. M. Spurr, was not legally placed in possession of the property. In the case of *Gallego* v. *Attorney General,* 3 Leigh 450, Judge Tucker, in writing the opinion of the court, after discussing the necessity of every deed or devise having certain and definite grantee or devisee and that a church is an unincorporated, uncertain and continually changing as to persons constituting the body, says: "These and a multitude of like difficulties present themselves to the notion of any grant or conveyance to a religious society or to trustees for their use. For in the eye of the law the intervention of a trustee does not remove a single difficulty. There is not more necessity for a properly defined grantee in a deed than for a *cestui que trust* capable of taking and so defined and pointed out, that the trust will not be void for uncertainty. In short, there cannot be a trust without a *cestui que trust;* and if it cannot be ascertained who the *cestui que trust* is, it is the same thing as if there was none. These principles it is confidently believed are the general principles of the common law upon this subject. If there are exceptions to these principles those exceptions may without doubt be shown. A diligent search has lead me to the conviction that there was no case at common law, in which a bequest or a trust of this indefinite character could be supported; and the learned counsel on both sides have acknowledged that they have been unable to discover any case anterior to the statute 43 Elizabeth in which the validity of such bequests in trusts has been distinctly recognized by the courts." In case of *Baptist Association* v. *Hart's Ex'rs.,* 4 Wheat. 1, it

was held that a bequest "To the Baptist Association that for
ordinary meets at Philadelphia, annually," was void; "The as-
sociation not being incorporated at the testator's decease could
not take this trust as a society." The opinion of the court was
written by Chief Justice Marshall who says, at page 28: "This·
·association is described with sufficient accuracy to be clearly
understood; but not being incorporated is incapable of taking·
this trust as a society. Can the bequest be taken by the indi--
viduals who compose the association at the death of the testa-
tor? The court is decidedly of opinion it cannot." In *Mong*
v. *Roush,* 29 W. Va. 119, (syl. pt. 1,) it is held: "A bequest to·
trustees of a church or unincorporated religious society is void."
And in *Morris* v. *Morris,* 48 W. Va. 430, at page 437, it is said:
"In the creation of a trust by will or deed the beneficiary must
be a definite, certain, ascertainable person, natural or corporate,
else the trust is not enforceable," citing *Brown* v. *Caldwell,* 23
W. Va. 187-193; *Association* v. *Hart,* 4 Wheat. 1; *Gallego* v.
*Attorney General,* 4 Leigh 466; *Carskadon* v. *Torreyson,* 7 W.
Va. 43. In sec. 979*a,* Stor. Eq. Jures. it is said: "If a trust be·
·clearly created in a party, but the terms by which it is created·
are so vague and indefinite that courts of equity cannot clearly
ascertain either its object or the persons who are to take, then
the trust will be held entirely to fail and the property will fall
into the general funds of the author of the trust." This is·
quoted with approval in the case of *Wilson* v. *Perry,* 29 W. Va.
169, where it was held that the following bequests were void for·
uncertainty as to the beneficiaries—"$500.00 to fence the lot
of ground on which Mt. Pleasant Presbyterian Church stands,
and the grave-yard belonging thereto; $4,000.00 to purchase·
a parsonage for the use and benefit of the Mt. Pleasant Pres-
byterian Church forever; $250.00 to buy books for the library
of the Presbyterian Sunday School at Union; $250.00 to buy
books for the library of the Sunday School at Centreville, Mon-
roe county, W. Va.; $250.00 to establish a Sunday School at
Fairview School house in Monroe county, W. Va., and provide·
the same with a· library; $300.00 for the sole and exclusive·
use and purposes of the Home Missions of the Presbyterian
Church in the United States, * * * and half of the residue·
to be applied to the purchase .of a parsonage for the use and
benefit of the Presbyterian church at Union, W. Va., forever.""

The bequests here mentioned are far more certain and definite than the trust created in the case at bar. And in the case of *Pack* v. *Shanklin,* 43 W. Va. 304, (syl. pt. 4), it is held: "To the validity of every disposition as well of personal as of real estate it is requisite that there be a definite subject and object; and uncertainty in either of these particulars is fatal." See also *Heiskell* v. *Trout,* 31 W. Va. 810.

The cases cited by the appellants, *Seymour* v. *Slide & Spurr Gold Mines,* 153 U. S. 523, and *Fritts* v. *Palmer,* 132 U. S. 282, and *Cowin* v. *Hurst,* decided by the Supreme Court of Michigan, 83 N. W. 274, are not analogous to the case at bar. In the first mentioned case, Seymour, who was managing director in possession of the property of the plaintiff, the Slide & Spurr Gold Mines, did not deny the company's right to possession of the property, and that his term as managing director had expired, the said company being a corporation; and in. *Fritts* v. *Palmer* the rights of a corporation were involved, and *Cowin* v. *Hurst* was a suit between individuals who had a right to sue, while in case at bar plaintiffs claim that they are suing as trustees for the benefit of a church, when it appears from the bill that neither the trustees nor the church they claim to represent have any interest in the property in controversy and. therefore cannot maintain their suit.

For the reasons herein given there is no error in the decree· complained of and the same must be affirmed.

*Affirmed.*