# CHARLESTON.

DEEPWATER RAILWAY COMPANY *v.* HONAKER, COMMITTEE, *et als.*

Submitted March 10, 1909. Decided November 2, 1909.

1. RELIGIOUS SOCIETIES—*Conveyances to—Validity.*
    A conveyance of land to trustees for the use and benefit of a religious sect or denomination, as a place of public worship, is, by section 2606, Code 1906, valid, and not void for uncertain-

ty, and, as provided by said statute, will be construed to give the local society or congregation of such religious sect or denomination control thereof.  (p. 140).

2.  HUSBAND AND WIFE—*Conveyance by Wife to Church—Effect as Dedication.*

A deed of a married woman, made to trustees in 1881, for the use and benefit of a religious sect or denomination, invalid for want of privy examination, as the law then was, is not by statute good as a parol dedication of the property attempted to be conveyed; the statute not sanctioning or authorizing such gifts otherwise than by deeds of conveyance.  (p. 143).

3.  RELIGIOUS SOCIETIES—*Conveyances to—Validity—Statutory Provisions.*

The *proviso* of section 2606, Code 1906, "that no lot of ground used for church purposes shall be taken from the members of the church that purchased the same, or for whose use or benefit it was conveyed, devised or dedicated," has application alone to the clause immediately preceding, and was not intended to validate void deeds of conveyance, devises, or dedications of land not authorized by said section, nor does the latter clause of section 6, of chapter 57, of the Code, (section 2612, Code 1906) have that effect.  (p. 143).

*Quaere:*  Although parol dedication of land to a religious sect or denomination be not authorized by statute in this state, could such a gift be supported as a common law dedication thereof, for the uses and benefit of such religious sect or denomination?  Discussed, but not decided.  (p. 144).

4.  APPEAL AND ERROR—*Review—Questions of Fact.*

Where a case has been referred to a commissioner, and the commissioner's report and findings of fact have been overruled by the court below, this Court will determine for itself, from the evidence, whether it will sustain the conclusion of the commissioner of those of the court.  (p. 147).

5.  RELIGIOUS SOCIETIES—*Property—Acquisition by Adverse Possession.*

Church trustees, like other persons, may, under a deed as color of title, acquire good title to land by adverse possession, though the deed be the deed of a married woman, purporting to convey her separate estate, but void for want of privy examination, and they will acquire such title as the deed purports to convey.  (p. 147).

6.  DEEDS—*Estate Created—Estate on Condition—Restraint on Alienation—Validity.*

If such deed purports to convey land absolutely, though upon trust, but not upon condition precedent or subsequent upon which the vesting of the title is to depend, such deed will not

be construed to create an estate on condition, unless language is used which *ex proprio vigore* imports a condition. If such deed contain limitations on the power of alienation, repugnant to the estate created, they will be void as against public policy. (p. 148).

Error to Circuit Court, Mercer County.

Condemnation proceedings by the Deepwater Railway Company. W. B. Honaker, committee for Huldah Alvis, intervened by petition setting up right and title to the condemnation money paid into court, and T. C. Gooch and others, trustees of the Methodist Episcopal Church South, filed their answer thereto controverting the claim of the petitioner. Judgment for Honaker, committee, and the trustees bring error.

*Reversed and Rendered.*

*A. W. Reynolds,* for plaintiffs in error.

*Hale & Pendleton* and *J. M. McGrath,* for administrator of Huldah Alvis.

MILLER, PRESIDENT:

In condemnation proceedings, the commissioners appointed reported that they had viewed the 4.15 acres of land owned by Charles A. Deaton and others, trustees of the Methodist Episcopal Church South, and proposed to be taken, and were of opinion that $1250 would be a just compensation to them therefor. This report, without exception, was confirmed, and the money awarded ordered to be paid into court, into the hands of the general receiver, and the title to the land was adjudged to be "absolutely vested in fee simple" in the said railway company. The fund so paid into court is the subject of the present controversy. After the money had been so paid into court Honaker, Committee for Huldah Alvis, intervened by petition, setting up right and title thereto, and Deaton and others, trustees, filed their answer thereto, controverting the claims of the petitioner. The case was then referred to a commissioner to take and hear evidence and report who in his opinion was entitled to said fund. He reported that in his opinion Gooch and others, trustees, were entitled to the money. The court, however, sustained the exception thereto, and adjudged the said Honaker, committee, entitled thereto, and directed the money paid over to

him. To this final judgment, the present writ of error was awarded upon the petition of said trustees.

Gooch and his co-trustees originally entered on the land taken under a deed from Joseph H. and Huldah Alvis of July 4, 1881, whereby, in consideration of one dollar, and by the terms thereof, the grantors undertook to "grant and convey unto the parties of the second part as trustees and to the survivor or survivors of them and to their successors perpetually, in trust for the use of and sole and exclusive benefit of the Southern Methodist Church, commonly known as the 'Methodist Episcopal Church South,' said tract of land, described as lying in Mercer County, West Virginia, on Brush Creek, and within a mile and a half of the town of Princeton, and near the Alvis Mill, together with the right and privilege to go on and over the contiguous lands and to take therefrom sufficient water to accommodate any congregation assembled there for worship;" and with this *habendum:* "To have and to hold the said tract or parcel of land unto the said parties of the second part their survivors and successors forever in trust to permit said Methodist Episcopal Church South to erect thereon a Camp Ground for the purpose of publicly congregating for worship. And for any and all other purposes consistent with the discipline of said Church and not contrary to the law of the State of West Virginia, but not to be alienated to a private individual by said Church."

It is conceded that this deed as to Huldah Alvis is void for want of privy examination. So far as the record shows, however, neither before the death of her husband, occurring in 1884, nor afterwards and before she was adjudged insane in 1904, did she at any time repudiate her deed, or assert any right or title to the land. In 1882 the land was transferred on the land books of Mercer county to C. A. Deaton and others, trustees, and deducted from the tract out of which it had been conveyed. It so remained for every year thereafter; but, except for the year 1882, no taxes thereon were extended against the land; the memorandum on the land book showing, for the earlier years, that it was "Camp Ground," and for the later years, "church property."

Besides the invalidity of said deed, the committee of Mrs. Alvis relies on and tenders the following additional issues of law and fact: First, that even if the deed was good to Mrs. Alvis,

the trust was so indefinite and the beneficiaries so uncertain as to be incapable of execution, rendering the deed absolutely void on its face for this reason; second, that conceding the deed to have been good, nevertheless, because of alleged abandonment and non-user of the property by the beneficiaries, and because of the taking thereof for railroad purposes, the property by operation of law has reverted to the grantor, and that she, and not the trustees, is entitled to the money paid into court in said condemnation proceedings.

The plaintiffs in error, though admitting the voidness of the deed as to Mrs. Alvis, by their answer, and in argument, controvert all other propositions of said committee, and affirm and rely on two counter propositions: First, that there was a parol dedication of the property by Mrs. Alvis to the uses and purposes set forth in said deed, by her acts and conduct, estopping her from setting up any claim to the land or the proceeds thereof inconsistent therewith; and, second, that whether the first proposition be true or not, they acquired title to said land by adverse possession. The soundness of these two propositions are, of course controverted by counsel for Mrs. Alvis.

The question underlying these controverted propositions is, as it seems to us, whether the trust, if created by deed, would be good under our statute, for, if invalid for uncertainty, would it not be void also as a statutory dedication to religious or charitable uses? Of course, we cannot regard the trust as having been created by deed, for that is invalid; but as evidence of a parol dedication, and as defining or describing the trust attempted to be created thereby, would the trust be void for uncertainty? It is argued for Mrs. Alvis: First, that the "Methodist Episcopal Church South" has many congregations and members scattered throughout the states, and that it is impossible to determine which of these many congregations may have been intended by the deed or dedication. Section 2606, Code 1906, properly construed, we think, conclusively negatives this proposition. It provides that: "Every conveyance, devise or dedication which has been made since the first day of January, one thousand seven hundred and seventy-seven, and every conveyance of land which shall hereafter be made for the use or benefit of any church, religious sect, society, congregation or denomination, as a place of public worship  *  *   *  *  * shall be

valid, and shall be construed to give the local society or congregation of such church to whom it was so conveyed, devised or dedicated, the control thereof, except as herein provided; and the land shall be held for such purposes and no other." The statute says of such a grant, devise, or dedication, that it shall be valid and construed to give the local society, &c., the control thereof. The land described in the deed is located near the town of Princeton. It is abundantly proven that there is and was but one local congregation of the denomination designated in the deed at or near Princeton, and that by acts of parties and otherwise the deed had been construed as investing the equitable title and control of the land in the local congregation of that church at Princeton. If the deed had been good as the deed of Mrs. Alvis, by the very mandate of the statute it would have invested in the local society or congregation of the church at Princeton the control thereof. Though the exact point we have here was not involved there, we understand this to have been the dictum of *Carskadon* v. *Torreyson,* 17 W. Va. at pages 104, 106, 109. Among other decisions, however, we are cited to *Bible Society* v. *Pendleton, Trustee,* 7 W. Va. 79; *Wilson* v. *Perry,* 29 W. Va. 169, and *Pack* v. *Shanklin,* 43 W. Va. 304, as opposing this view. We do not so interpret those cases. They were all will cases, involving bequests of money to purchase residences for ministers, or lots on which to erect them, and not, as in this case, grants of land specifically authorized by statute, wherefore inapplicable. Without observing the distinction noted by Judge PAUL, in *Bible Society* v. *Pendleton,* at page 89, between conveyances and devises of land or personal property, it is erroneously assumed in *Wilson* v. *Perry,* at page 191, and in *Pack* v. *Shanklin,* at page 318, that the several bequests involved in the *Bible Society case,* including the bequest "to the trustees of the Presbyterian Congregation at Martinsburg (Old School) the sum of $3,000, to be applied by them towards the purchase of a lot and the erection thereon of a house, or the purchase of a house and lot and fitting the same for the residence of the pastor of the said Congregation," were invalid because of uncertainty. Referring to the argument that that gift could be supported as a grant because of the prior deed of the testator to a trustee to sell the land, and out of the proceeds of which the bequest had been made, Judge PAUL dis-

tinctly says: "This is an effort to uphold the laudable object of the will under the first section of chapter fifty seven of our Code. * * * * This is the only substitute we have for 43d Elizabeth; upon examination we find that while it does authorize the *conveyance* of land for the residence of a minister, it is silent in regard to *devises* and *bequests* for this purpose. And it has been expressly held in Virginia, that the word *conveyance* in this section does not include a devise of land, and, *a fortiori,* that it does not authorize a bequest of money for this purpose." Citing *Seaburn's Ex'or* v. *Seaburn,* 15 Grat. 423. We cite, also, *Literary Fund* v. *Dawson,* 10 Leigh 147. These cases will be more pertinent to the question next to be considered, viz., whether the gift of the land in controversy, can be supported as a parol dedication thereof to religious and charitable uses? It may not be out of place here to observe that all these decisions on the question we now have under consideration refer back to *Gallego's Ex'ors.* v. *Attorney General,* 3 Leigh 450, opinions by Judges Carr and Tucker, which latter case was itself largely predicated on *Baptist Association* v. *Hart's Ex'or.,* 4 Wheat. 1, opinion by Chief Justice Marshall, afterwards very much shaken, if not overruled, by the celebrated *Girard Will Case,* opinion by Justice Story, 2 How. 127. And the *Gallego Case* was practically overruled by *Society* v. *Churchman,* 80 Va. 718, and in the well considered case of *Trustees* v. *Guthrie,* 86 Va. 125; but it seems the doctrine of *Gallego's Case* has been re-affirmed in *Fifield* v. *Van Wyck's Ex'or.,* 94 Va. 557 (27 S. E. 446). The court, in the latter case, however, distinguishing it from the former cases, and them from the *Gallego Case,* and referring to the *Churchman* and *Guthrie Cases,* says: "Their dicta announce views contrary to a long line of decisions of very able judges, and, although their decisions may have been based upon erroneous views as to the powers of courts of chancery over charities at common law, and as to the extent to which the Statute of 43 Eliz. had been or was in force in this state, still those decisions have settled the law upon the subject, except as changed by the legislature from time to time." The statute we now have was not in force at the time of the *Gallego Case;* besides, that case and the other cases just reviewed related to bequests of money, not grants of land, now authorized by statute.

Having determined that the gift of the land would have

been good if made by a valid deed, the next question is, can it be supported as a parol dedication for the purposes described in the deed? It is plainly to be seen that the statute in terms only authorizes conveyances of land, and it has been distinctly ruled in Virginia, in *Seaburn* v. *Seaburn, supra,* authority binding on us, that the statute does not authorize a devise of land; and the principles of this case has been approved in prior and subsequent cases in that state, as well as in our own cases of *Bible Society* v. *Pendleton, supra; Carskadon* v. *Torreyson, supra; Wilson* v. *Perry, supra; Pack* v. *Shanklin, supra; Knox* v. *Knox,* 9 W. Va. 142; *Wilmoth* v. *Wilmoth,* 34 W. Va. 436, and *Weaver* v. *Spurr,* 56 W. Va. 95. But it is argued that the proviso contained in section 2606, originally section 1, chapter 86, Acts 1872-3, omitted in the amendment thereof, section 1, chapter 33, Acts 1882, but restored by section 1, chapter 41, Acts 1883, saves this property to the trustees and the beneficiaries That proviso is: "Provided, however, That no lot of ground used for church purposes shall be taken from the members of the church that purchased the same, or for whose use or benefit it was conveyed, devised or dedicated." In order to understand what is here provided against, we must look to the language immediately preceding, that is: "Any conveyance of property for the use of two or more contiguous congregations, shall be construed to give such contiguous congregations the equitable title to such property." Now it is quite evident that the proviso has application alone to this provision of the statute, and was intended to save the property conveyed for the use of two or more congregations to the "members of the church that purchased the same, or for whose use or benefit it was conveyed, devised or dedicated." Certainly it was not intended to validate void deeds or invalid devises or dedications of lands or money inveighed against in the many decisions which we have been considering, else they would all be practically meaningless.

It was suggested in council, though not argued here, that possibly the latter clause of section six of chapter 57, being an amendment of said section, by chapter 33, Acts 1882, would save the property to the church as a statutory dedication. But we do not think this provision can be given that effect. That section, by the Act of 1872-3, constituted the trustees of a church, as well as of a college, school, society, &c., and whether

named in the conveyance, devise, or dedication, or appointed by the court a corporation, as "the board of trustees of ——— church, &c., by which name they may sue and be sued, plead and be impleaded, contract and be contracted with, and do and perform any and all other acts and business pertaining to the trust created by such conveyance, devise or dedication." The amendment of 1882, omitted trustees of churches, and very properly made provision therein as to where the title to property which might have theretofore been conveyed, devised, .or dedicated to a "board of trustees of ——— church" should thereafter be vested, and the provision made was that the title should vest in the said trustees individually and collectively, and should be "as valid and binding in all respects as if such property had been conveyed to them by their proper names." We do not think, therefore, that this amendment was intended to otherwise effect or change the provision of section 1 of that chapter.

But it is argued that, if the gift be not good as a statutory dedication, it is good as a common law dedication. It is undoubtedly true that dedications of land to public use, as for streets, alleys, public parks, squares, or buildings, &c., whether by deed or by parol, are good at common law, and may be established by all kinds of evidence. 13 Cyc. 454 457-8, 475, and cases cited in notes. But the question we have here is, is a parol dedication to religious and charitable uses good at common law? The authorities mainly relied on by plaintiffs in error to establish the affirmative of this proposition are: 9 Amer. & Eng. Ency. L. (2nd Ed.) 27; *Hannibal* v. *Draper,* 15 Mo. 634; *Pawlet* v. *Clark,* 9 Cranch 332; *Beatty* v. *Kurtz,* 2 Pet. 566, and *Benn* v. *Hatcher,* 81 Va. 25. These authorities do seem to affirm the proposition, and it is alluded to, without comment, in *Sturmer* v. *County Court,* 42 W. Va., at page 730. In 9 Amer. & Eng. Ency. L., at page 23, on the authority of some of the cases just cited, and other cases, it is said: "By analogy, rather than in strict conformity to the common law principle, the doctrine has been invoked to uphold gifts for pious and charitable uses, as for churches, schools and cemeteries, though their benefits are employed by a certain class and not by the public at large;" and at page 27: 'Where gifts for charitable objects would fail for want of a definite grantee capable of receiving the

gift, the principles of dedication may often be applied and the gift upheld. The requisites of such a dedication are the same as in the case of the dedication of a street or highway." In 13 Cyc. 446, it is said: "Whether, because recognized under 43 Eliz. chapter 4, or under the general principles of equity relating to charitable uses; or because in a civilized community a religious use is in its very nature a public use, it has invariably been held that land may be dedicated to pious and religious uses, without a grantee in being to take, and although the proposed beneficiaries were a limited class of the public. Thus land may be dedicated for churches, burial grounds, cemeteries, or tombs, even though limited to the use of a particular sect."

But it is argued for defendant in error that whatever be the law in other jurisdictions, the gift can not be sustained as a common law dedication: First, because there is no evidence of an intent to dedicate; and, second, that in Virginia and in this State such a gift would be contrary to the public policy of the state, no provision being made therefor by statute, and as manifested by the history of the legislation and the judicial decisions on the subject. In *Beatty* v. *Kurtz, supra,* originating in Maryland, and in the cases cited from other states it is argued the decisions were controlled by the statute of Elizabeth in force, or the principles of which were in some way recognized in constitutions or statutes. There is some force in this argument. For example, in the case just referred to, the bill of rights of Maryland recognized and utilized such dedicatory gifts. The authorities all agree that, while no formalities are necessary, there must be unmistakable intent on the part of the dedicator to dedicate, and is argued here that there is no evidence showing any such intent in this case. We think, however, there is abundant evidence of such intent. The deed itself, though invalid as such, is itself evidence of such intent. 13 Cyc. 475, and cases cited in notes. And, if more is needed, there is evidence of transfer of the land for taxes, oral declarations of the dedicatrix, actual participation by her in the use of the property for the purposes for which it was given, acts so positive and unequivocal as to leave no room for doubt. We have no trouble so far as the evidence of intent is concerned. If we assume there was a common law dedication, how will it affect the question we have here as to the right to the money in controversy? The land dedi-

cated has been taken in condemnation for railroad purposes, a public use to be sure, but not the use intended by the grantor or dedicator. A common law dedication does not deprive a party of title to his land. It only estops him while the dedication continues in force from asserting that right of exclusive possession and enjoyment which the owner of property ordinarily has, while under many of the statutes a dedication made in conformity therewith vests the fee simple title to the property dedicated in the city, town, &c., as the statute may provide. 13 Cyc. 486 and cases cited in notes, including *Campbell* v. *Kansas City,* (Mo.) 10 L. R. A. 590, 599, 601. This Missouri case decides that, where land dedicated to public use is abandoned, and is no longer devoted to the purposes to which it was dedicated, the title reverts to the original owner or his heirs. And this seems to be the general rule whether the dedication be statutory or at common law. 13 Cyc. 497. But where the land is taken by condemnation, the rule, it seems, is somewhat different. If the use be not changed, the former owner, in whom the legal title remains invested, is, it seems, then entitled to only nominal damages, even though he may have to pay for benefits. 13 Cyc. 491-3. Here the use, though still a public use, has been wholly changed from the original purposes of the dedicator, and the question arises, would not the right and title to the land, depending on a mere common law dedication, revert to the dedicator? But we need not decide this question, for, according to our view of the case, the rights of the parties turn on the question of adverse possession, involving to some extent the question of abandonment raised by the defendant in error, and next to be considered.

The plaintiffs in error rely on the deed, though originally void, as color of title, and adverse possession thereunder. This presents two questions: First, was there such adverse possession as could have ripened into good title, or was the property abandoned as claimed by defendant in error? Second, can church trustees acquire title by adverse possession, and, if so, what kind of title could they acquire under the deed here involved, as color of title, as against the original grantors? On the question of adverse possession, or abandonment, we think the evidence, though somewhat conflicting, preponderatingly in favor of the finding of the commissioner, and of the plaintiffs

in error, and that the court below erred in sustaining his exception thereto and pronouncing judgment for defendant in error. There is no question but that the grantees went into immediate possession of the land under the deed, built a shed thereon for religious services, and although but two camp meetings were held on the ground, one in 1881, and the other in 1882, the trustees continued in possession of the land, held Sunday School picnics thereon, warned trespassers, put up notices on the land, and maintained the land on the land books, and no one with authority from Mrs. Alvis had possession of the land, except by occasional acts of trespass, but at a time when Mrs. Alvis continued to treat the land as belonging to the trustees, and to reaffirm and declare their rights and the rights of the church, of which she was a member. We think this and other evidence shows such actual, notorious, visible, exclusive and continuous adverse possession of the property as the parties and deed contemplated, and for the time requisite to ripen into such title, as was intended to be conveyed by the deed. It is quite questionable whether this was a proper case to have been sent to a commissioner. No accounting was required. See Hogg's Eq. Proc., section 628. But where a case has been properly referred, and the commissioner's report and findings of fact have been overruled by the court below, this Court will determine for itself from the evidence whether it will sustain the conclusions of the commissioner or that of the court. *Roots* v. *Kilbreth,* 32 W. Va. 591-2. We think the finding of the commissioner in this case was clearly right.

But can church trustees acquire title by adverse possession? The general rule is that a deed, though void, is color of title under which title may be acquired by the grantee by adverse possession. And this rule is applicable, so far as it effects her separate estate, though the grantor be a married woman. *Randolph* v. *Casey,* 43 W. Va. 289, 293; *Waldron* v. *Harvey,* 54 W. Va. 608; *State* v. *Harman,* 57 W. Va. 447; *Russell* v. *Tennant,* 63 W. Va. 623. And the authorities say that church trustees can acquire title by adverse possession, and that the title thus acquired is not encumbered by any equitable trust which may have been in force prior to the date on which the adverse possession began. 24 Am. & Eng. Ency. L. 362, and the cases cited in note 9. But if we concede that the grantees, by tak-

66 W. Va.

ing possession and holding under the deed from Mrs. Alvis, acquired by adverse possession only such title as was intended to be invested in them thereby, what title was acquired by them? The deed recites a money consideration, nominal, it is true, but nevertheless a valuable consideration. It purports to convey the absolute title, though in trust, but not upon any condition precedent or subsequent upon the happening of which the vesting of the title was to depend. The deed contains no terms of reverter in the event the property should be devoted to uses and purposes other than those specified in the grant. The rule in such cases, as stated by Judge SNYDER in *Brown* v. *Caldwell,* 23 W. Va. 187, 189-190, seems to be that: "A deed will not be construed to create an estate on condition, unless language is used which, according to the rules of law, *ex proprio vigore,* imports a condition." "Conditions subsequent," says this learned Judge in the same case, "are not favored in law. If it be doubtful whether a clause in a deed be a covenant or a condition, courts of law will always incline against the latter construction. Conditions are not to be raised readily by inference or argument." And, at page 192 of the same case, it is said with reference to the deed there involved: "The deed contains no intimation that it was made on such condition. There are no apt or proper words to create a condition; there is no clause of re-entry or forfeiture. * * * * * The use declared is not for the benefit of the grantor or his heirs or assigns. There can be no doubt of the intent of the grantor that the land should always be used for the purpose declared. This intent is clearly expressed, but there are no words to indicate an intention that, if the grantee permitted the land to be used for a different purpose, the title should thereupon be forfeited and revert to the grantor or his heirs." And, concluding, he says: "Taking into consideration the whole instrument and the purposes of the grant and the absence of any clause of forfeiture or re-entry, it seems to me, the fair construction is, that the grantor intended the title to be in trust and not upon condition." The authority cited by Judge SNYDER is the leading case of *Sohier* v. *Trinity Church,* 109 Mass. 1, 19. It is true that the deed we have under consideration contains a restraint upon alienation, but it is an attempted grant in fee, and in such cases conditions or restrictions absolutely restraining alienation

when repugnant to the estate created are void as against public policy. 13 Cyc. 687.

Our conclusion therefore is to reverse the judgment below, and enter such judgment here as the circuit court should have pronounced, and it will be so ordered.

*Reversed and Rendered.*